[No. 9627–1–III. Division Three. June 7, 1990.]

THE STATE OF WASHINGTON, *Appellant,* v. TERRY LEE ALLERT, *Respondent.*

*Donald C. Brockett, Prosecuting Attorney,* and *Sam Cozza, Deputy,* for appellant.

*Lewis Schrawyer* and *Keyes & Schrawyer,* for respondent.

THOMPSON, J.—The State appeals an exceptional sentence, below the standard range, imposed on Terry Lee Allert for his conviction on two counts of first degree robbery. We affirm.

Mr. Allert, former police chief of Ritzville, Washington, robbed two grocery stores with a pellet gun on November 27, 1987. He pleaded guilty to two counts of first degree robbery in July 1988.

At the sentencing hearing, psychiatrist Dr. Robert Wetzler testified Mr. Allert had three disorders: depression, compulsive personality and alcohol addiction. Dr. Wetzler testified Mr. Allert's ability to perceive and to understand was impaired:

> Q. Can you draw a distinction then between perhaps in Terry Allert's case knowing physically what he was doing, yet at the same time not having the guilt mechanism, the perception of what he was doing and the perception of wrongfulness?
> A. That's what I am trying to say. Perhaps I am not saying it well. That the ability to perceive and to understand is impaired. The intent, perhaps what he is doing is there. But the ability to understand and perceive and stop doing it or seek some other alternative, and these are all impaired.

When asked on cross examination whether Mr. Allert could distinguish right from wrong, Dr. Wetzler testified:

> A. I don't think that at this time I have to deal with right and wrong. I am not saying this man is insane. I am talking about a diminished capacity to understand and perceive. I don't think it reaches the level of an insanity defense [or] plea. I am quite sure that in looking back when a person is driving who is drunk doesn't have the time to perceive or understand what is right and wrong. So I think there is a diminished area also there.
> Q. You also spoke, if I understand correctly, that he did not feel a sense of guilt, did not feel a sense of a conscience that bothered him?
> A. I think you are misinterpreting perhaps what I said. I think he does have a guilt, but at the time this occurred his guilt signal was not present. He could not tell him to stop. Do you say this I only use it as an example of sometimes when

I am doing something, if it is wrong or I am starting to do something, can I have the signal to say this is not wise, this is not good, this is not bad. Those are judgments and he didn't have the judgment to make that.

When asked whether Mr. Allert's preparation for the crimes indicated he had a perception his conduct was wrong, Dr. Wetzler replied:

A. I can agree and disagree in the same breath. Perception is to know and to understand. To call upon background material in terms of information, intelligence, conception of past behavior. At that time he perceived, yes, but the perception and contact with reality was diminished and impaired.

Dr. E. Clay Jorgensen, a clinical psychologist, testified as follows when asked whether Mr. Allert knew the difference between right and wrong:

A. I think Mr. Allert was impaired in terms of his judgment and thinking and ability to reason out what was happening or what he was doing at that time.

Q. He could recognize that what he was doing was wrong but he was doing it for a number of reasons, whether those be good reasons or bad reasons?

A. I am not sure he was able to determine that.

The court entered the following findings, all of which are challenged by the State:

1.1 Defendant, at the time of the commission of these offenses, suffered from three medically recognized mental disorders, i.e., depression, severe compulsive personality, and alcoholism.

1.2 Because of the separate and combined effects of each mental disorder, the defendant's capacity to appreciate the wrongfulness of his conduct and to conform his conduct to the requirements of the law was significantly impaired.

1.3 Based on the reports and testimony of Dr. Robert Wetzler and Dr. Clay Jorgensen, this court finds that had the defendant plead [sic] not guilty, the defense of diminished capacity would have been viable and might well have resulted in acquittal.

1.4 An exceptional sentence of 12 months in work release confinement, followed by 24 months of community supervision, with the conditions of abstaining from use or possession of alcohol and drugs, and of TASC monitoring, including Antabuse if appropriate, and of alcohol, drug and mental treatment, provides sufficient protection to society, and punishment to the defendant to accomplish the purposes of RCW Ch. 9.94A.

. . . .
1.7 The treatment needs of the defendant can be met in the community, and while this factor is not sufficient alone to justify an exceptional sentence, it does help to establish that the purposes of RCW 9.94A will be satisfied with the imposition of an exceptional sentence.
1.8 The defendant does not suffer from an antisocial personality disorder, and objective psychological tests conducted by Dr. Jorgensen suggest the defendant's profile is not consistent with that of a criminal offender. As such, defendant is not a future risk to the community in terms of criminal, violent, or assaultive behavior, given the terms of the exceptional sentence as suggested by the Department of Corrections.

Based on these findings, the court concluded:
2.1 Considering the purpose of RCW Ch. 9.94A, there are substantial and compelling reasons justifying the exceptional sentence.
2.2 The above findings provide ample substantial and compelling reasons for an exceptional sentence; however, the significant impairment of the defendant's capacity to appreciate the wrongfulness of his conduct and to conform his conduct to the requirements of the law; by itself provides the requisite substantial and compelling reasons for a departure.

The court imposed an exceptional sentence of 12 months in work release, followed by 24 months of community supervision. The standard range was 41 to 54 months on each count.

■ Review of an exceptional sentence is governed by RCW 9.94A.210(4), which provides for a 3–step inquiry: (1) whether the reasons supplied by the sentencing judge are supported by the record, a factual determination that must be upheld absent a finding the reasons are clearly erroneous, *State v. Nordby,* 106 Wn.2d 514, 517–18, 723 P.2d 1117 (1986); (2) whether these reasons justify an exceptional sentence as a matter of law, *Nordby,* at 518; and (3) whether the sentencing judge abused his discretion by imposing a sentence that was "clearly excessive" or "clearly too lenient". RCW 9.94A.210(4)(b); *State v. Oxborrow,* 106 Wn.2d 525, 529–30, 723 P.2d 1123 (1986).

The presentence report, alcohol assessment, psychiatric and psychological evaluations, and testimony of Drs. Wetzler and Jorgensen factually support findings 1.4, 1.7, and 1.8. However, these findings, read together, demonstrate the court's belief that Mr. Allert could be adequately and beneficially treated in the community, and that he is not a future risk to the community. Without more, the findings simply reflect the court's disagreement and with the presumptive sentence range established by the Legislature, taking these circumstances into account.

> The Legislature has stated that the sentencing reform act was designed to promote several significant interests, including protection of the public, the need for rehabilitation, and the need to make frugal use of state resources. *See* RCW 9.94A.-010(4), (5), (6). The presumptive sentence ranges established for each crime represent the legislative judgment as to how these interests shall best be accommodated. *See* D. Boerner, [*Sentencing in Washington*] § 2.5(b), (c), (d) [(1985)]. The trial court's subjective determination that these ranges are unwise, or that they do not adequately advance the above goals, is not a substantial and compelling reason justifying a departure.

*State v. Pascal*, 108 Wn.2d 125, 137–38, 736 P.2d 1065 (1987).

The finding that an alternative to imprisonment would be best for Mr. Allert fails to account for the statutory determination that already has been made by the Sentencing Reform Act of 1981 (SRA). The court conceded as much by observing the treatment factor alone was not enough to justify an exceptional sentence. These findings do not justify an exceptional sentence.

Finding 1.1 is supported by testimony of Drs. Wetzler and Jorgensen, who both agreed Mr. Allert suffered from depression, compulsive personality, and alcohol addiction. However, the finding is not itself a justification for imposing an exceptional sentence. It is merely supportive of findings 1.2 and 1.3. Finding 1.3 indicates the defense of

diminished capacity "would have been viable and might well have resulted in acquittal".[1]

> Diminished capacity arises out of a mental disorder, usually not amounting to insanity, that is demonstrated to have a specific effect on one's capacity to achieve the level of culpability required for a given crime. *State v. Ferrick,* 81 Wn.2d 942, 944, 506 P.2d 860, *cert. denied,* 414 U.S. 1094 (1973), *modified in State v. Griffin,* 100 Wn.2d 417, 418, 670 P.2d 265 (1983). . . . Existence of a mental disorder is not enough, standing alone, to raise an inference that diminished capacity exists, nor is conclusory testimony that the disorder caused a diminution of capacity. The testimony must explain the connection between the disorder and the diminution of capacity. *State v. Edmon,* 28 Wn. App. 98, 103, 621 P.2d 1310, *review denied,* 95 Wn.2d 1019 (1981).

*State v. Gough,* 53 Wn. App. 619, 622, 768 P.2d 1028, *review denied,* 112 Wn.2d 1026 (1989). In a case of first degree robbery, the defense would be directed to attempting to negate animus furandi (intent to steal), a necessary element of the crime. *State v. Jones,* 34 Wn. App. 848, 850, 664 P.2d 12 (1983).

Nothing in the record suggests Mr. Allert did not have the intent to steal.[2] In fact, the evidence clearly shows Mr. Allert did intend to steal. The presentence investigation report indicates he committed the second robbery because the cash he obtained in the first robbery was insufficient to

---

[1]We have difficulty with this finding on a conceptual level. The diminished capacity defense relates to whether the defendant possessed the required level of criminal culpability to commit the crime charged. *State v. Griffin,* 100 Wn.2d 417, 419, 670 P.2d 265 (1983). Here, Mr. Allert pleaded guilty to the crimes, thus admitting the required level of culpability. We recognize that degrees of blameworthiness may be relevant in imposing criminal sanctions. *State v. Pascal, supra* at 136–37; D. Boerner, *Sentencing in Washington* § 9.12(c), at 9–24 (1985). Whether this concept of "failed defenses" is applicable when a defendant pleads guilty is an issue we need not address, in view of our conclusion the court's finding is not supported by the record.

[2]Dr. Wetzler's use of the phrase "diminished capacity" related to Mr. Allert's impaired ability to perceive and understand. Both experts in their written reports indicated Mr. Allert's ability to form a "specific intent" was impaired, but neither explained his definition of the legal term. Neither expert testified Mr. Allert had no intent to steal. In fact, Dr. Wetzler earlier testified: "The intent, perhaps what he is doing is there."

solve his problems. In light of this evidence, the court's finding was clearly erroneous.

Finding of fact 1.2 is directed to RCW 9.94A.390(1)(e), which establishes as a mitigating circumstance under the SRA:

> The defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law, was significantly impaired (voluntary use of drugs or alcohol is excluded).

It is unclear what level of mental impairment is required to satisfy this "stringent test". *State v. Rogers,* 112 Wn.2d 180, 185, 770 P.2d 180 (1989). Theoretically, the standard should not reach the level of the insanity defense, *see* RCW 9A.12.010, which, if proved, puts a defendant "beyond any . . . influences of the criminal law'". *State v. Crenshaw,* 98 Wn.2d 789, 793, 659 P.2d 488 (1983) (quoting *State v. White,* 60 Wn.2d 551, 590, 374 P.2d 942 (1962)).

Professor Boerner notes that the language of RCW 9.94A.390(1)(e) is taken from Model Penal Code § 4.01, which the Legislature considered and rejected in 1975 as an insanity defense standard. D. Boerner, *Sentencing in Washington* § 9.12(c)(3), at 9–26 (1985).

> Our system of criminal law is based on the assumption that people have the capacity to make choices and that it is just to hold them accountable for the choices they make. Expanding the situations in which harmful conduct is excused because of the inability of a person to control behavior he or she knows is wrong strikes at this fundamental assumption, and Washington, more than most jurisdictions, through both the judiciary and the legislature, has steadfastly resisted attempts to expand the defense.
>
> . . . .
> The adoption of . . . an expansive test as a mitigating factor is not, however, fundamentally inconsistent with Washington's history of dealing with issues of volition, since the mitigating circumstance is just that—a definition of situations in which mitigation, not exculpation, is justified. The issue of responsibility, to which the insanity defense is addressed, has been determined by conviction. The issue at sentencing is not whether this person should be held responsible, but now that responsibility has been determined, what punishment is deserved. It is not inconsistent to say, as Washington now does, that claims of inability to control behavior will not excuse

responsibility, but will be considered in determining the appropriate punishment.

(Footnotes omitted.) D. Boerner, at 9–27 to 9–28.

In *State v. Rogers, supra* at 184, the trial court had found the defendant's judgment was "exceptionally impaired, his thinking irrational and his behavior impulsive". The Supreme Court held this finding did not meet the standard of RCW 9.94A.390(1)(e), because the court did not find, based on the evidence, that there was a significant impairment of the defendant's ability to appreciate the wrongfulness of his conduct and to conform to the law. *Rogers,* at 185.

Here, the court's finding tracks the language of the statute and *Rogers,* but the question is whether the evidence supports that finding. Dr. Wetzler's testimony, quoted above, indicates Mr. Allert's ability to perceive and understand, and his contact with reality, were impaired to the extent he was unable to make the judgment to stop himself. Dr. Jorgensen testified he was not sure Mr. Allert could recognize his behavior was wrong. The evidence, while perhaps insufficient to establish an insanity defense, supports the court's finding that there was a significant impairment of Mr. Allert's ability to appreciate the wrongfulness of his conduct and to conform his conduct to the requirements of the law.

However, RCW 9.94A.390(1)(e) expressly excludes its application when the mental condition is caused by voluntary use of drugs or alcohol. *See State v. Ward,* 49 Wn. App. 427, 743 P.2d 853 (1987). This raises the question of Mr. Allert's alcoholism. In *State v. Pennington,* 112 Wn.2d 606, 611, 772 P.2d 1009 (1989), the court held as a matter of law "that a drug or alcohol problem *in and of itself* is not a substantial or compelling reason justifying imposition of an exceptional sentence." (Italics ours.)

■ Here, alcoholism was only a part of Mr. Allert's impairment. His inability to appreciate the wrongfulness of his conduct and to conform his conduct to the law was

brought about by the combination of alcoholism, depression and his compulsive personality. The court imposed the exceptional sentence, not solely because of the alcoholism, but rather because of Mr. Allert's mental impairment, only part of which was attributable to alcoholism.

■ In summary, we hold that finding of fact 1.2, combined with finding 1.1, justifies an exceptional sentence. Finding 1.3 is factually unsupported, and findings 1.4, 1.7, and 1.8 are legally insufficient. However, when it is clear the court would have reached the same conclusion even if it had not considered other factors, remand is not necessary. *State v. Fisher,* 108 Wn.2d 419, 430 n.7, 739 P.2d 683 (1987); *State v. Davis,* 53 Wn. App. 306, 316, 766 P.2d 1120, *review denied,* 112 Wn.2d 1015 (1989); *State v. Tunell,* 51 Wn. App. 274, 284, 753 P.2d 543, *review denied,* 110 Wn.2d 1036 (1988). Here, the court's conclusions indicate it was relying primarily, if not solely, on finding of fact 1.2. It is clear the court would have imposed the exceptional sentence even in the absence of the other factors, and we decline to remand the case on that basis.

Finally, we consider whether the court abused its discretion by imposing a sentence that is "clearly too lenient".

■ "An abuse of discretion exists only when no reasonable person would take the position adopted by the trial court." *State v. Nelson,* 108 Wn.2d 491, 504–05, 740 P.2d 835 (1987). This standard for judicial discretion recently has been criticized as focusing improperly on the decision *maker,* rather than the decision itself. *See Coggle v. Snow,* 56 Wn. App. 499, 504–07, 784 P.2d 554 (1990); *see also State v. Creekmore,* 55 Wn. App. 852, 875, 783 P.2d 1068 (1989) (Forrest, J., concurring), *review denied,* 114 Wn.2d 1020 (1990). A more workable formula, adopted by *Coggle,* is the so-called *Junker* standard:

> Where the decision or order of the trial court is a matter of discretion, it will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.

210

*State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

In this case, the court fully explained its rationale in choosing Mr. Allert's sentence. Findings of fact 1.4, 1.7, and 1.8, while not themselves justifications for departing from the standard range, are valid explanations for the terms of the exceptional sentence.

At first blush, the court's sentence appears to be too lenient in relation to the gravity of the crime involved. However, having properly applied the mitigating circumstance provided by RCW 9.94A.390(1)(e), and thus having concluded an exceptional sentence was justified, the court properly considered the treatment available for Mr. Allert and the potential risk to society. The court imposed a sentence that balanced the exceptional term with the purposes of the SRA. The decision was neither unreasonable nor untenable.

We affirm.

GREEN, A.C.J., and SHIELDS, J., concur.

Review granted at 115 Wn.2d 1007 (1990).