[No. 57281-0.   En Banc.   August 1, 1991.]

THE STATE OF WASHINGTON, *Petitioner*, v. TERRY LEE ALLERT, *Respondent*.

*Donald C. Brockett, Prosecuting Attorney,* and *Kevin M. Korsmo, Deputy,* for petitioner.

*Keyes & Schrawyer,* by *Lewis M. Schrawyer,* for respondent.

ANDERSEN, J. —

## FACTS OF CASE

The State appeals an exceptional sentence *below* the standard range imposed on the defendant, Terry Lee Allert, following his conviction on two counts of first degree robbery. We reverse and remand for resentencing within the standard range.

On November 27, 1987, the defendant entered Bill's Foods in Spokane County and robbed a clerk of $374. He wore a ski mask and carried a pistol which police later determined to be a pellet gun. Later that same evening, the defendant in a similar manner robbed Barney's

Soopermarket, also in Spokane County, of $546. He pleaded guilty to two counts of first degree robbery. The defendant is a former police officer and was at one time Chief of Police at Ritzville, Washington.

At the sentencing hearing the trial court considered the following: a Presentence Investigation Report; an evaluation by the Alcohol Information Network; a report and testimony by Dr. Robert A. Wetzler, a psychiatrist; a report and testimony by Dr. E. Clay Jorgensen, a psychologist; a Victim Impact Statement and a letter from the defendant's employer. The standard sentencing range for the two robberies is concurrent terms of 41 to 54 months. The trial court, however, sentenced the defendant to an exceptional sentence of just 12 months in work release to be served in the Spokane County-City detention center to be followed by 24 months of community supervision. The defendant also was ordered to pay restitution and court costs and to abstain from the use of alcohol or drugs and to participate in counseling as directed by the community corrections officer.

At the sentencing hearing, Dr. Wetzler testified that the defendant suffered from depression, compulsive personality and alcohol addiction. Dr. Wetzler testified that those three problems interlocked to produce a serious psychiatric problem and mental disorder, and that the defendant's ability to perceive and understand was impaired.

The most relevant portions of Dr. Wetzler's testimony are as follows:

Q: Can you draw a distinction then between perhaps in [the defendant]'s case knowing physically what he was doing, yet at the same time not having the guilt mechanism, the perception of what he was doing and the perception of wrongfulness?

A: That's what I am trying to say. Perhaps I am not saying it well. That the ability to perceive and to understand is impaired. The intent, perhaps what he is doing is there.

But the ability to understand and perceive and stop doing it or seek some other alternative, and these are all impaired.

\* \* \*

Q: Could he distinguish right from wrong?

A: I don't think that at this time I have to deal with right and wrong. I am not saying this man is insane. I am talking about a diminished capacity to understand and perceive. I don't think it reaches the level of an insanity defense offer [sic] plea. I am quite sure that in looking back when a person is driving who is drunk doesn't have the time to perceive or understand what is right and wrong. So I think there is a diminished area also there.

Q: You also spoke, if I understand correctly, that he did not feel a sense of guilt, did not feel a sense of a conscience that bothered him?

A: I think you are misinterpreting perhaps what I said. I think he does have a guilt, but at the time this occurred his guilt signal was not present. He could not tell him to stop. Do you say this I only use it as an example of sometimes when I am doing something, if it is wrong or I am starting to do something, can I have the signal to say this is not wise, this is not good, this is not bad. Those are judgments and he didn't have the judgment to make that.

\* \* \*

Q: Would it not indicate that he had a perception of what he was doing in that he was taking steps to avoid detection by use of the ski mask, other steps to avoid identification, telling the people in the store to lie down, not look at him, that sort of thing? Doesn't that indicate that he had a perception what he was doing, that it was wrong and he had to do it in such a way as to avoid detection?

A: I can agree and disagree in the same breath. Perception is to know and to understand. To call upon background material in terms of information, intelligence, conception of past behavior. At that time he perceived, yes, but the perception and contact with reality was diminished and impaired.

Q: Found the method, didn't he, to do these things because he felt he needed money and couldn't get it any other way?

A: Yes, that's the error. In other words, you and I would not do these things because we could find an alternative, but he had none because of his mental illness.

Dr. Jorgensen essentially agreed with Dr. Wetzler. When asked whether the defendant knew the difference between right and wrong, Dr. Jorgensen testified:

A: I think [the defendant] was impaired in terms of his judgment and thinking and ability to reason out what was happening or what he was doing at that time.
Q: He could recognize that what he was doing was wrong but he was doing it for a number of reasons, whether those be good reasons or bad reasons?
A: I am not sure he was able to determine that.

The trial court entered the following findings, all of which are challenged by the State with the exceptions of findings 1.5 and 1.6.

## I. FINDINGS

1.1 Defendant, at the time of the commission of these offenses, suffered from three medically recognized mental disorders, i.e., depression, severe compulsive personality, and alcoholism.

1.2 Because of the separate and combined effects of each mental disorder, the defendant's capacity to appreciate the wrongfulness of his conduct and to conform his conduct to the requirements of the law was significantly impaired.

1.3 Based on the reports and testimony of Dr. Robert Wetzler and Dr. Clay Jorgensen, this court finds that had the defendant plead [sic] not guilty, the defense of diminished capacity would have been viable and might well have resulted in acquittal.

1.4 An exceptional sentence of 12 months in work release confinement, followed by 24 months of community supervision, with the conditions of abstaining from use or possession of alcohol and drugs, and of TASC [Treatment Alternatives to Street Crime] monitoring, including Antabuse if appropriate, and of alcohol, drug and mental treatment, provides sufficient protection to society, and punishment to the defendant to accomplish the purposes of RCW Ch. 9.94A.

1.5 The defendant currently has stable employment and can remain employed while serving a work release sentence,

and his current employer has supplied this court with a letter of recommendation and support to that effort.

1.6 The pre-sentence investigation report prepared by Beverly Joplin of the Department of Corrections, recommends an exceptional sentence of 12 months in jail with work release, followed by 24 months of community supervision with the conditions of monitoring and treatment.

1.7 The treatment needs of the defendant can be met in the community, and while this factor is not sufficient alone to justify an exceptional sentence, it does help to establish that the purposes of RCW 9.94A will be satisfied with the imposition of an exceptional sentence.

1.8 The defendant does not suffer from an anti-social personality disorder, and objective psychological tests conducted by Dr. Jorgensen suggest the defendant's profile is not consistent with that of a criminal offender. As such, defendant is not a future risk to the community in terms of criminal, violent, or assaultive behavior, given the terms of the exceptional sentence as suggested by the Department of Corrections.

Based on these findings, the court concluded:

## II. CONCLUSIONS

2.1 Considering the purpose of RCW Ch. 9.94A, there are substantial and compelling reasons justifying the exceptional sentence.

2.2 The above findings provide ample substantial and compelling reasons for an exceptional sentence; however, the significant impairment of the defendant's capacity to appreciate the wrongfulness of his conduct and to conform his conduct to the requirements of the law; by itself provides the requisite substantial and compelling reasons for a departure.

2.3 The exceptional sentence as outlined above and in the body of the Judgment and Sentence herein is neither clearly too excessive nor clearly too lenient, and it satisfied the purpose of the Sentencing Reform Act.

The State appealed the sentence and the defendant filed a motion on the merits to affirm. A commissioner for the Court of Appeals entered an order reversing the trial court's exceptional sentence and remanded for resentencing. The defendant's motion to modify the commissioner's ruling was granted and in a published opinion, the Court of Appeals affirmed the trial court's exceptional sen-

tence.[1] This court granted the Spokane County Prosecuting Attorney's request for review.

One issue is determinative.

ISSUE

Did the trial court err in imposing an exceptional sentence below the standard range?

DECISION

CONCLUSION. The reasons given by the trial court to support the defendant's exceptional sentence were either unsupported by the record or not legally sufficient to support such a sentence. Voluntary use of alcohol is not a mitigating sentencing factor under the current sentencing statutes.

■ Review of an exceptional sentence is governed by RCW 9.94A.210(4). An appellate court is to analyze the appropriateness of an exceptional sentence by answering the following three questions under the indicated standards of review:[2]

1. Are the reasons given supported by evidence in the record? As to this, the standard of review is "clearly erroneous".[3]

2. Do the reasons justify a departure from the standard range? The standard of review on this is as a "matter of law".[4]

3. Is the sentence clearly too lenient? The standard of review on this last question is "abuse of discretion".[5]

■ The first inquiry then is whether the eight findings of the trial court set forth above are supported by

---

[1]*State v. Allert*, 58 Wn. App. 200, 791 P.2d 932, *review granted*, 115 Wn.2d 1007 (1990).

[2]*State v. Dunaway*, 109 Wn.2d 207, 218, 743 P.2d 1237, 749 P.2d 160 (1987).

[3]*State v. Nordby*, 106 Wn.2d 514, 517-18, 723 P.2d 1117 (1986).

[4]*Nordby*, 106 Wn.2d at 518.

[5]*State v. Pascal*, 108 Wn.2d 125, 138, 736 P.2d 1065 (1987).

evidence in the record, and, if so, whether they justify a departure from the standard range. Because the first inquiry is factual, the trial court's findings will be upheld unless they are clearly erroneous.[6] However, in order for a reason to justify an exceptional sentence, the reason must be "substantial and compelling" and consistent with the purposes of the Sentencing Reform Act of 1981 (SRA).[7]

Finding 1.1, that the defendant suffered from depression, severe compulsive personality and alcoholism, is supported by both the reports and testimony of Dr. Wetzler and Dr. Jorgensen. However, this finding alone is not a substantial and compelling reason to deviate from the standard range. Alcoholism is not in and of itself a reason justifying imposition of an exceptional sentence.[8]

In *State v. Rogers*, 112 Wn.2d 180, 184-85, 770 P.2d 180 (1989), we held that a finding of exceptionally impaired judgment, irrational thinking and impulsive behavior was *not* sufficient to impose an exceptional sentence absent the court finding, based upon the evidence, that these factors led to significant impairment of the defendant's capacity to appreciate the wrongfulness of his conduct and to conform to law. As the Court of Appeals noted herein, finding 1.1 is not itself a justification for an exceptional sentence; rather, it merely supports finding 1.2.

Finding 1.2 is only partially supported by the record. The finding declares:

> Because of the separate and combined effects of each mental disorder [depression, compulsive personality and alcoholism] the defendant's capacity to appreciate the wrongfulness of his conduct and to conform his conduct to the requirements of the law was significantly impaired.

The commissioner in the Court of Appeals decided that this finding was *not* supported by the record and the

---

[6]*Pascal*, 108 Wn.2d at 135; *Nordby*, 106 Wn.2d at 517-18.

[7]*State v. Estrella*, 115 Wn.2d 350, 354, 359, 798 P.2d 289 (1990); *Pascal*, 108 Wn.2d at 135; RCW 9.94A.120(2).

[8]*State v. Pennington*, 112 Wn.2d 606, 611, 772 P.2d 1009 (1989).

Court of Appeals found it *was* so supported. In fact, the testimony of Drs. Wetzler and Jorgensen upholds the finding that the *combined* effect of these three conditions was to impair the defendant's appreciation of wrongfulness and ability to conform his conduct; there is, however, no evidence in the record that any *one* of these conditions alone had such an effect.

The testimony consistently referred to the *combination* of these conditions. Dr. Wetzler stated that "the three things are interlocked in terms of producing with him a serious psychiatric problem and mental disorder," and the defendant was "affected by the three conditions". Dr. Wetzler used the example of a drunk driver who doesn't understand what is right and wrong. Dr. Jorgensen testified that the defendant needed treatment for alcohol abuse, and for depression and compulsive personality problems. Dr. Wetzler stated: "These disorders [alcoholism, depression and compulsive personality] cause an inability to reason, think, perceive, or weigh alternatives or be aware of the consequences of behavior or his acts because of impairment of judgment and controls." Dr. Jorgensen's report states: "I believe that Mr. Allert's criminal behavior was directly a result of the combination of his drinking and depression. . . . I believe Mr. Allert is not at risk for future criminal behavior as long as he is not drinking." In sum, the record shows that it was alcoholism *combined* with the depression and compulsive personality which caused defendant's impairment in appreciating the wrongfulness of the conduct.

As the conflict between the commissioner and the Court of Appeals well demonstrates, the experts' testimony regarding the defendant's ability to perceive the wrongfulness of his conduct and to conform it to law was both equivocal and confusing. However, there was testimony that at the time of the crime the defendant's "guilt signal was not present". When asked about the defendant's perception of wrongfulness, Dr. Wetzler testified that it was

the defendant's ability to understand and perceive and stop his wrongful conduct that was impaired.

It is a close question whether the record supports the finding that the defendant's capacity to appreciate the wrongfulness of his conduct and his ability to conform it to law were impaired. This court has recently referred to this question as a "stringent test".[9] However, the trial court's findings must be upheld unless "clearly erroneous". Therefore, we conclude that the portion of finding 1.2 which holds the *combined effects* of the three disorders caused the defendant to have impaired ability to recognize wrongfulness and conform his conduct *is* supported by the record, but that the portion of the finding which holds that the separate effects of these disorders caused this result is *not* supported by the record.

The question therefore arises as to whether this reason, as a matter of law, supports the imposition of an exceptional sentence.

RCW 9.94A.390 provides a list of illustrative factors a court may consider when imposing an exceptional sentence and includes as a mitigating factor:

> The defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law, was significantly impaired (*voluntary use of drugs or alcohol is excluded*).

(Italics ours.) RCW 9.94A.390(1)(e). This mitigating factor is the primary reason the trial court imposed a sentence below the standard range.[10]

*State v. Pennington*, 112 Wn.2d 606, 772 P.2d 1009 (1989) establishes that an alcohol problem in and of itself is not a reason justifying an exceptional sentence. Moreover, the Minnesota Supreme Court, to which we have often looked for guidance in sentencing cases, has held that a defendant's chemical dependency problem is not a factor which can be relied upon as justifying a

---

[9]*State v. Rogers*, 112 Wn.2d 180, 185, 770 P.2d 180 (1989).

[10]Conclusion of law 2.2.

durational departure.[11] Minnesota also has held that a defendant's voluntary use of drugs may not be relied upon as a basis for concluding that the defendant lacked substantial capacity for judgment.[12]

We conclude that voluntary use of alcohol is an improper factor to consider in deciding whether to impose an exceptionally low sentence. Since the experts and the trial court utilized the impermissible factor of alcoholism as a mitigating factor, finding 1.2 does not constitute a compelling and substantial reason to support a lenient sentence. The record does not bear out that absent alcohol abuse the defendant would have been impaired in appreciating the wrongfulness of his conduct.

There is no indication in RCW 9.94A.390(1)(e), or in the legislative history of that enactment, that the Legislature intended intoxication by an alcoholic to be other than "voluntary intoxication". To hold otherwise would result in an application of RCW 9.94A.390(1)(e) wherein a court could give an alcoholic a sentence below the standard range when a crime was committed while the accused was intoxicated, but would disallow intoxication as a mitigating factor if the accused was not an alcoholic. We decline to conclude that the Legislature intended such an anomalous result. If the Legislature intends that intoxication by an alcoholic be treated differently for sentencing purposes than intoxication by one not an alcoholic, then that decision is better suited to the legislative process wherein the psychological characteristics of compulsive diseases can be studied. We find no such intent in the present statutory scheme.

It follows from the foregoing, that since the trial court relied upon the defendant's alcoholism as one factor, and a key factor, in its determination that the defendant did not appreciate the wrongfulness of his conduct, this finding (1.2) does not constitute a valid reason to impose an exceptional sentence below the standard sentencing range.

---

[11]*State v. Gardner*, 328 N.W.2d 159, 162 (Minn. 1983).

[12]*State v. Nelson*, 329 N.W.2d 827, 829 (Minn. 1983).

In finding 1.3, the trial court stated that had the defendant pleaded not guilty, the defense of diminished capacity "would have been viable and might well have resulted in acquittal." Under RCW 9A.16.090 no act is deemed less criminal because it is committed by a person who is voluntarily intoxicated. However, when a particular intent is a necessary element of a crime, the intoxication may be taken into consideration in determining such mental state. Although both experts said the defendant had a diminished capacity negativing specific intent, there is nothing in the record which indicates that the defendant lacked the intent to steal. (Intent to steal is the mental element necessary in a robbery.)[13] The presentence investigation report shows that the defendant committed the second robbery after counting the money from the first robbery and deciding it was insufficient to solve his financial problems. Additionally, the defendant pleaded guilty to robbery thereby admitting the intent element.[14] The Court of Appeals is correct in its conclusion that the record did not support finding 1.3, which was highly conjectural.

Finding 1.4, that the sentence imposed provides sufficient protection to society, is supported by the experts' opinions that the defendant was unlikely to re-offend if he was successful in alcohol treatment. Finding 1.5, that the defendant could remain employed while on work release, is supported by a letter from his employer and is not challenged on appeal. Finding 1.6, that the presentence report recommended an exceptional sentence below the standard range, is supported by the record and also is not challenged. Sentencing findings not challenged are verities on appeal.[15]

---

[13]*State v. Hicks*, 102 Wn.2d 182, 184, 683 P.2d 186 (1984); *State v. Jones*, 34 Wn. App. 848, 850, 664 P.2d 12 (1983).

[14]*See In re Hews*, 108 Wn.2d 579, 595-96, 741 P.2d 983 (1987).

[15]*State v. Altum*, 47 Wn. App. 495, 502, 735 P.2d 1356, *review denied*, 108 Wn.2d 1024 (1987).

Finding 1.7 that the defendant's treatment needs can be met in the community also is supported by Dr. Wetzler's and Dr. Jorgensen's reports and testimony. Finding 1.8 that the defendant does not pose a future risk to the community also is supported by the opinions of the expert witnesses and by the defendant's lack of any prior criminal history.

■ ■ Although findings 1.4, 1.5, 1.6, 1.7 and 1.8 are factually supported, they are not substantial and compelling reasons to justify an exceptional sentence. The SRA was designed to provide proportionate punishment, protect the public and provide rehabilitation, and the presumptive ranges established for each crime represent the *Legislature's judgment* as to how best to accommodate those interests.[16] *State v. Pascal*, 108 Wn.2d 125, 137, 736 P.2d 1065 (1987) held that the trial court's subjective determination that these ranges are unwise or that they do not advance these goals is not a reason justifying departure from the normal range, and the fact that the defendant may not pose a threat to the public is not a reason supportive of an exceptional sentence.[17]

Because the voluntary use of alcohol cannot be utilized as a mitigating factor under RCW 9.94A.390(1)(e), no valid reason supports the imposition of the exceptional sentence in this case. Thus, the trial court's reasons either are unsupported by the record or, to the extent they are supported factually, are not legally sufficient to support the exceptional sentence. Therefore, we need not reach the question whether the sentence is "clearly too lenient" under RCW 9.94A.210(4).[18]

In conclusion, we hold that findings 1.1, 1.4, 1.7 and 1.8 are supported by the record. Findings 1.5 and 1.6 are not

---

[16]*State v. Pascal*, 108 Wn.2d 125, 137, 736 P.2d 1065 (1987). *See State v. Estrella*, 115 Wn.2d 350, 798 P.2d 289 (1990).

[17]*Pascal*, 108 Wn.2d at 137.

[18]*See State v. Rogers*, 112 Wn.2d 180, 770 P.2d 18 (1989); *State v. Pennington*, 112 Wn.2d 606, 772 P.2d 1009 (1989).

challenged and are verities on appeal. However, none of these findings constitute a legally sufficient reason to deviate from the standard sentencing range. Finding 1.3 is not supported by the record. Finding 1.2 is only partially supported and does not constitute a valid reason to impose an exceptional sentence because the trial court relied upon the defendant's alcoholism which is not a proper mitigating factor under RCW 9.94A.390(1)(e) or under *State v. Pennington*, 112 Wn.2d 606, 772 P.2d 1009 (1989).

Reversed and remanded for resentencing within the standard range.

DORE, C.J., and BRACHTENBACH, DOLLIVER, DURHAM, and SMITH, JJ., concur.

JOHNSON, J. — I dissent. The trial court properly exercised its discretion in imposing an exceptional sentence. The structured discretion the Sentencing Reform Act of 1981 (SRA) granted to the trial court in this situation is taken away by the majority. I would affirm the Court of Appeals decision to uphold the trial court.

We must look to the legislative purpose behind the SRA to determine if the trial court acted properly in this case. One of the SRA's purposes is:

> to make the criminal justice system accountable to the public by developing a system for the sentencing of felony offenders *which structures, but does not eliminate, discretionary decisions affecting sentences* . . ..

(Italics mine.) RCW 9.94A.010.

The SRA's principle of structured discretion is illustrated by RCW 9.94A.390. This statute provides the list of mitigating and aggravating circumstances which a trial court may consider in exercising its discretion to impose an exceptional sentence. The listed circumstances are "illustrative only and are not intended to be [the] exclusive reasons for exceptional sentences." RCW 9.94A.390.

As this court noted in *State v. Nordby*, 106 Wn.2d 514, 516, 723 P.2d 1117 (1986):

> The drafters of the statute recognized that "not all exceptional fact patterns can be anticipated", Washington Sentencing Guidelines Comm'n, *Implementation Manual* § 9.94A.390, Comment (1984), and that the trial court must tailor the sentence to the facts of each case.

*See also* D. Boerner, *Sentencing in Washington* 9-1 (1985). The defendant's situation in this case presents one of the "exceptional fact patterns" that the drafters of the SRA recognized could not have been anticipated. The trial court below correctly tailored the sentence to the facts of the case.

When the defendant committed the crime, he was suffering from three medically recognized disorders: depression, severe compulsive personality and alcoholism. The majority is correct that the record does not support a finding that the three disorders *separately* caused Allert's impairment. However, the record does support the trial court's finding that the *combined* effects of these mental disorders constituted a mitigating circumstance pursuant to RCW 9.94A.390(1)(e). This finding does support the imposition of an exceptional sentence.

RCW 9.94A.390(1)(e) provides that it is a mitigating circumstance for sentencing purposes when:

> [t]he defendant's capacity to appreciate the wrongfulness of his conduct . . . was significantly impaired (voluntary use of drugs or alcohol is excluded).

RCW 9.94A.390(1)(e). RCW 9.94A.390(1)(e) does not specifically indicate whether it applies when a defendant's capacity to appreciate the wrongfulness of his conduct occurs due to a *combination* of multiple, medically recognized mental disorders. This is particularly true when only one of these disorders involved alcohol abuse.

Also, the record in this case does not reflect that alcohol abuse *alone* significantly impaired the defendant's capacity to appreciate the wrongfulness of his conduct. One of

the experts testified that the defendant's drinking *stemmed from* the defendant's depression and compulsive personality disorder. Report of Proceedings, at 13. In discussing treatment possibilities for the defendant, the same expert witness stated: "I don't think the alcohol problem should be treated unless we address the other psychiatric problems. If we don't address those, we are just treating a symptom." Report of Proceedings, at 13.

Due to the SRA's policy of structured discretion, this court should leave within the trial court's discretion the determination of whether a defendant was capable of appreciating the wrongfulness of his conduct under RCW 9.94A.390(1)(e) where multiple, medically recognized mental disorders are alleged, and only one of these disorders involves substance abuse. The sentencing judge is in the best position to weigh the evidence and determine whether an exceptional sentence is warranted. This is particularly true when live testimony is involved. Determinations of credibility are to be given considerable weight. *In re Deming*, 108 Wn.2d 82, 110, 736 P.2d 639, 744 P.2d 340 (1987). The trial court in this case properly exercised its discretion, after evaluating the testimony and documents submitted to it, in imposing an exceptional sentence. The majority takes this discretion away, contrary to the policy behind the SRA.

The majority's reasoning in analyzing this issue is flawed. It concludes that a trial court cannot consider alcohol abuse as a factor in imposing an exceptional sentence. See majority, at 166-67. In so stating, it ignores this court's unanimous holding in *State v. Bernhard*, 108 Wn.2d 527, 741 P.2d 1 (1987), *overruled on other grounds in State v. Shove*, 113 Wn.2d 83, 776 P.2d 132 (1989).[19] In *Bernhard*, this court upheld the imposition of an exceptional sentence, which consisted of a 12-month inpatient drug treatment program, based on the trial court's finding

---

[19]The lower courts had interpreted dicta in *Bernhard* as allowing for a form of sentence modification not provided for by the SRA. In *Shove*, the court overruled that dicta. *Shove*, 113 Wn.2d at 88-89.

that the defendant's criminal behavior directly resulted from his addictions to drugs and alcohol. *Bernhard*, 108 Wn.2d at 529. *Bernhard* did not involve RCW 9.94A-.390(1)(e). However, the case still indicates that a trial court can consider whether or not a direct causal connection between a defendant's substance abuse and his or her criminal act is a substantial and compelling reason justifying an exceptional sentence.

Also, the majority relies on *State v. Pennington*, 112 Wn.2d 606, 772 P.2d 1009 (1989), in reasoning that a defendant's alcohol dependency cannot be a factor in granting an exceptional sentence. Majority, at 166, 170. In *Pennington*, the trial court imposed an exceptional sentence after finding that the defendant's drug dependency substantially contributed to his criminal act. This court determined that the record in *Pennington* did not support this finding. *Pennington*, 112 Wn.2d at 609. In this case, the trial court found that the defendant's three mental disorders, including the alcohol abuse, combined to impair the defendant's ability to know he was acting wrongfully. As the majority notes, the expert testimony in this case does support this finding. The defendant in this case, unlike in *Pennington*, did establish a causal connection between his mental disorders and his wrongful acts. As a result, *Pennington* is inapplicable to this case.

In addition to ignoring *Bernhard* and misapplying *Pennington*, the majority cites two Minnesota cases to support its conclusion that a trial court cannot rely on a chemical dependency problem as a factor in imposing an exceptional sentence. Neither of these cases supports this proposition. In *State v. Gardner*, 328 N.W.2d 159 (Minn. 1983), the court held that the trial court improperly used the defendant's drug addiction as an *aggravating* factor in giving the defendant an exceptional sentence *upward*. *Gardner* is clearly distinguishable from this case, and cannot be relied on to support the majority's proposition.

Similarly, the majority relies on *State v. Nelson*, 329 N.W.2d 827 (Minn. 1983). In *Nelson*, the court held that

while a defendant's willingness to succeed in drug treatment is not a ground for a durational departure, it *is* a ground for a dispositional departure in the form of a stay of execution of sentence. *Nelson*, 329 N.W.2d at 829. Unlike Minnesota's sentencing system, Washington's Sentencing Reform Act of 1981 does not provide for a dispositional departure in sentencing. RCW 9.94A.130; D. Boerner, *Sentencing in Washington* 9-9 (1985). Nevertheless, substance dependency *can* be a factor for imposing an exceptional sentence in Minnesota.

Before looking to case law from other jurisdictions, the court should first consider the SRA's policy of structuring, not eliminating, trial court discretionary decisions affecting sentences. Moreover, the trial court was in the best position to evaluate whether the defendant's case merited an exceptional sentence. The trial court's findings of fact are entitled to deference under the "clearly erroneous" standard of review. *State v. Nordby*, 106 Wn.2d at 517-18. RCW 9.94A.390(1)(e) provides the legal basis for the exceptional sentence in this case. The sentence of 12 months in jail and 24 months of community supervision was not "clearly too lenient" under RCW 9.94A.210(4). The trial court properly exercised the discretion granted to it by the SRA when it imposed the exceptional sentence. I would affirm the Court of Appeals decision to uphold the trial court.

UTTER and GUY, JJ., concur with JOHNSON, J.

Reconsideration denied October 22, 1991.