947 P.2d 1192 (1997)
133 Wash.2d 847
STATE of Washington, Respondent,
v.
John Jay JEANNOTTE, Appellant.
No. 65169-8.
Supreme Court of Washington, En Banc.
Argued October 10, 1997.
Decided December 11, 1997.
*1193 Phelps & Associates, Douglas D. Phelps, Spokane, for Appellant.
James Sweetser, Spokane County Prosecutor, Carlin M. Jude, Deputy County Prosecutor, Spokane, for Respondent.
TALMADGE, Justice.
We are asked to determine if a trial court may impose an exceptional sentence below the standard range on the basis of a failed defense when the jury has explicitly rejected such defense in rendering its verdict. We hold the Sentencing Reform Act of 1981(SRA), RCW 9.94A, explicitly authorizes a trial court to treat a failed defense as a mitigating factor supporting an exceptional sentence below the standard range. We affirm the decision of the Court of Appeals with respect to Jeannotte's convictions, but reverse the sentencing aspect of the Court of Appeals' decision, reinstating the trial court's exceptional sentence.

ISSUE
Did the trial court properly consider Jeannotte's failed entrapment defense as a mitigating factor in imposing an exceptional sentence below the standard range although the jury rejected the entrapment defense?

FACTS
Steven Rigg became a confidential police informant in May 1993 after the Spokane County Sheriff's Department discovered a marijuana grow operation in his basement. Rigg had previously been arrested in 1990 for possession of cocaine although the charge was later reduced to a misdemeanor. Fearing he might face drug charges and the loss of his home in a civil forfeiture proceeding, Rigg agreed to cooperate with the Sheriff's Department in drug cases. Pursuant to such cooperation, the Sheriff's Department asked Rigg if he knew of persons involved in drug dealing or manufacturing; he named John Jeannotte, a Spokane business owner.[1]
*1194 Rigg had known Jeannotte for three or four years, and the two men had used drugs together. The two men saw each other frequently at a local pub. Although Rigg knew Jeannotte had used cocaine, he had never known Jeannotte to sell cocaine.
The record conflicts as to who initiated the drug deal at issue in this case. Rigg testified while he and Jeannotte were talking at the pub, Jeannotte said he had access to cocaine and he would sell some to Rigg. Jeannotte's story is that Rigg had hounded him for months to sell him some cocaine, which Jeannotte always refused, but Jeannotte finally relented. In any event, a drug deal was agreed upon, Rigg contacted law enforcement, and a controlled buy was set up.
On July 14, 1993, Rigg met Jeannotte in the parking lot of a local restaurant. Rigg got into Jeannotte's truck and the two went for a short ride. They then returned to the parking lot. During the drive, Jeannotte gave Rigg a can with several bindles of cocaine inside, and Rigg gave Jeannotte $600 of marked "buy money." Rigg testified Jeannotte took one bindle from the can and kept it. Jeannotte testified Rigg left the bindle on the seat for his trouble in setting up the deal. Rigg acknowledged the bindle was for Jeannotte's personal use. Jeannotte returned Rigg to the parking lot and drove off. Rigg gave a prearranged signal. Jeannotte was followed, stopped, and arrested. In a search incident to the arrest, the police discovered the bindle of cocaine in the truck's seat cover. Jeannotte was charged in the Spokane County Superior Court with one count of delivery of a controlled substance, cocaine, and one count of possession of cocaine.
At trial, testifying in his own behalf, Jeannotte admitted the sale of the cocaine to Rigg, but claimed entrapment. The jury convicted Jeannotte on both counts. The trial court sentenced him below the standard range on the delivery count, imposing an exceptional sentence of 12 months with work release privileges on the basis of the failed entrapment defense.
Jeannotte appealed the convictions asserting various errors relating to double jeopardy and discovery abuses. The State cross-appealed the exceptional sentence. The Court of Appeals affirmed the convictions in an unpublished opinion, but remanded the case for resentencing holding the trial court's exceptional sentence improper in light of the jury verdict rejecting Jeannotte's entrapment defense, and noting the offender score for the delivery count was miscalculated. State v. Jeannotte, No. 14406-2-III, unpublished op. at 7-8, 1996 WL 736255 (Dec. 26, 1996). Jeannotte petitioned for review, which we granted only as to the sentencing issue.

ANALYSIS
A. The Failed Entrapment Defense May be Considered by the Sentencing Court
The SRA provides certain "failed defenses" may constitute mitigating factors supporting an exceptional sentence below the standard range. In State v. Hutsell, 120 Wash.2d 913, 921, 845 P.2d 1325 (1993), we noted, "[t]he mitigating circumstances enumerated in RCW 9.94A.390 represent failed defenses[,]" citing with approval David Boerner, Sentencing in Washington 9-23 (1985) as follows:
The Guidelines contain a number of mitigating factors applicable in situations where circumstances exist which tend to establish defenses to criminal liability but fail. In all these situations, if the defense were established, the conduct would be justified or excused, and thus would not constitute a crime at all. The inclusion of these factors as mitigating factors recognizes that there will be situations in which a particular legal defense is not fully established, but where the circumstances that led to the crime, even though falling short of establishing a legal defense, justify distinguishing the conduct from that involved where those circumstances were not present. Allowing variations from the presumptive sentence range where factors exist which distinguish the blameworthiness of a particular defendant's conduct from that normally present in that crime is wholly consistent with the underlying principle. Certainly the fact that the substantive law treats these circumstances as complete defenses establishes the legitimacy of *1195 their use in determining relative degrees of blameworthiness for purposes of imposing punishment.
Hutsell, 120 Wash.2d at 921-22, 845 P.2d 1325 (footnote omitted). These "failed defense" mitigating circumstances include self-defense, duress, mental conditions not amounting to insanity, and entrapment: RCW 9.94A.390(1)(a) (victim was aggressor);[2] RCW 9.94A.390(1)(c) (defendant acted under duress or compulsion insufficient to constitute a complete defense); RCW 9.94A.390(1)(d) (defendant, with no apparent predisposition to do so, was induced by another to participate in the crime); RCW 9.94A.390(1)(e) (capacity to appreciate wrongfulness of conduct was significantly impaired).[3]See also Boerner, supra, at 9-24 to 9-30. By allowing failed defenses to be treated as mitigating circumstances, the Legislature recognized there may be "`circumstances that led to the crime, even though falling short of establishing a legal defense, [that] justify distinguishing the conduct'" from that in other similar cases. Hutsell, 120 Wash.2d at 921, 845 P.2d 1325 (quoting Boerner, supra, at 9-23).
We have repeatedly indicated an exceptional sentence may be based on a failed entrapment defense pursuant to the express legislative direction in the SRA. In State v. Nelson, 108 Wash.2d 491, 499, 740 P.2d 835 (1987), we recognized a failed entrapment defense as a mitigating factor under RCW 9.94A.390:
Lack of predisposition and inducement by others to commit the crime is one of the mitigating factors listed under RCW 9.94A.390[(1)(d)]. Therefore, as a matter of law, this factor justifies the imposition of a nonstandard sentence.
Most recently, in State v. Ha'mim, 132 Wash.2d 834, 843, 940 P.2d 633 (1997), we reaffirmed that a failed entrapment defense may be considered as a mitigating factor in sentencing:
The "lack of predisposition" to commit a crime alone is not a substantial and compelling reason for a court to impose an exceptional sentence below the range the Legislature has set for a given offense. Its relevance lies only in combination with the finding that the defendant was "induced" to commit the crime. The lack of the individual's previous inclination to commit the crime, together with the fact that he or she was induced by someone else to participate in the crime, may reduce the culpability of the defendant; the statutory mitigating circumstance recognizes this and allows sentencing courts to deviate from the standard range set by the SRA. RCW 9.94A.390(1)(d).
(Emphasis added.)
The Court of Appeals determined Jeannotte's failed entrapment defense could not be considered by the trial court in sentencing Jeannotte, where the jury rejected that defense, relying on State v. Snider, 70 Wash.2d 326, 422 P.2d 816 (1967):
[t]he court may not substitute its judgment for that of the jury on factual matters.... Since the jury determined Mr. Jeannotte's lack of predisposition was not proved at trial, the court's contrary finding for sentencing purposes is clearly erroneous.
Jeannotte, No. 14406-2-III, unpublished op. at 7, 1996 WL 736255.
Snider, however, is distinguishable. In Snider, the defendant appealed his conviction for robbery asserting the trial court erred by not granting a new trial because contradictions in the testimony established reasonable doubt he was guilty of robbery. We held the assignment of error without merit, noting:

*1196 It is the function and province of the jury to weigh the evidence, to determine the credibility of the witnesses, and to decide the disputed questions of fact. The conflicts in the evidence merely present a question of fact for the jury. The jury is the sole and exclusive judge of the evidence, the weight to be given thereto, and the credibility of the witnesses. This court will not reverse if there is substantial evidence to support the jury findings.
Snider, 70 Wash.2d at 327, 422 P.2d 816 (citations omitted). Thus, under Snider, a trial court cannot vacate a conviction based on its disagreement with the jury's determination of witness credibility. That is not the issue here.
The State also cites from State v. Lively, 130 Wash.2d 1, 16, 921 P.2d 1035, (1996), noting a "trial court may not substitute its own evaluation of the evidence for that of the jury[.]" However, the language cited by the State addressed a different issue and does not advance the State's position here. In Lively, we noted:
The Defendant argues that the mitigating factors listed above [i.e. trial court findings in support of the exceptional sentence based on defendant's failed entrapment defense] in effect result in a finding of entrapment, as a matter of law, by the trial court. This court will not conclude, however, that mitigating factors used to justify an exceptional sentence may be considered in evaluating whether there was sufficient evidence to submit an issue to a jury. Such a finding would result in a reluctance of courts to examine mitigating circumstances which justify exceptional sentences. Moreover, the trial court may not substitute its own evaluation of the evidence for that of the jury where the court has denied a motion to dismiss based on the insufficiency of the evidence.
Lively, 130 Wash.2d at 16, 921 P.2d 1035 (emphasis added).
In Lively, the trial court considered the defendant's failed entrapment defense in imposing a below-standard-range exceptional sentence. While this Court, in a 5 to 4 decision, overturned Lively's conviction based on the "outrageous conduct" of the police, both the majority and the concurrence/dissent acknowledged the trial court acted appropriately in considering the failed entrapment defense in imposing the exceptional sentence. The majority opinion relied on findings of fact supporting the exceptional sentence as part of its due process analysis. Lively, 130 Wash.2d at 24-25, 921 P.2d 1035. The concurrence/dissent noted:
The trial court in Lively acted appropriately. Following a jury conviction for delivery of cocaine, the trial court acknowledged that mitigating circumstances existed, and thus departed downward from the standard sentencing range. It did not dismiss the prosecution, as the majority would have trial courts do after today's decision.
Lively, 130 Wash.2d at 34, 921 P.2d 1035 (Durham, C.J., concurring in part, dissenting in part).
Plainly, Pascal, Nelson, Hutsell, and Ha'mim are dispositive of the State's argument that a sentencing court may not properly consider factual evidence apparently rejected by the jury when that jury rejects a defendant's proffered affirmative defense and convicts the defendant. We discern no distinction between the above cited cases in which the defendant pleaded guilty to the offense (see, e.g., Nelson, Hutsell and Ha'mim), forgoing a possible defense to the charged crime, and the present case where the jury rejected the defense, as was the case in Pascal. The Legislature did not draw such a distinction in RCW 9.94A.390(1). The Legislature contemplated the sentencing court could treat entrapment and other such circumstances as mitigating when the conviction is based on a rejection of the same defense. These mitigating circumstances would be meaningless if the sentencing court were bound by the jury's rejection of the defense. Thus, contrary to the Court of Appeals holding, a trial court's finding regarding these mitigating circumstances is not "clearly erroneous" simply because it conflicts with the jury's rejection of the defense. Rather, the issue is whether there is support in the record for the trial court's findings.
*1197 B. The Trial Court's Use of the Failed Entrapment Defense as a Mitigating Factor in Sentencing Was Justified
Having established that the elements of a failed entrapment defense may be used as a mitigating circumstance in sentencing, the next question is whether such mitigation is sustainable in this case. The considerations for our review of an exceptional sentence are well established. In State v. Allert, 117 Wash.2d 156, 163, 815 P.2d 752 (1991), we stated:
Review of an exceptional sentence is governed by RCW 9.94A.210(4). An appellate court is to analyze the appropriateness of an exceptional sentence by answering the following three questions under the indicated standards of review:
1. Are the reasons given supported by evidence in the record? As to this, the standard of review is "clearly erroneous".
2. Do the reasons justify a departure from the standard range? The standard of review on this is as a "matter of law".
3. Is the sentence clearly too lenient? The standard of review on this last question is "abuse of discretion".
(Footnotes omitted.) See also State v. Branch, 129 Wash.2d 635, 645-46, 919 P.2d 1228 (1996).
1. The Trial Court's Stated Reasons for the Exceptional Sentence Are Supported by the Record and Are Not Clearly Erroneous
In applying the "clearly erroneous" standard in reviewing a trial court's reasons for imposing an exceptional sentence, we have stated "[w]e will reverse the trial court's findings only if no substantial evidence supports its conclusion." State v. Grewe, 117 Wash.2d 211, 218, 813 P.2d 1238 (1991). Substantial evidence has been defined as "`evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premises.'" Olmstead v. Department of Health, 61 Wash.App. 888, 893, 812 P.2d 527 (1991) (quoting Green Thumb, Inc. v. Tiegs, 45 Wash.App. 672, 676, 726 P.2d 1024 (1986)).
Here, the trial court made extensive findings on sentencing and found Rigg was the instigator of the drug transaction. The court also found, other than Rigg's testimony, which the court found unpersuasive, there was no evidence before the court that Jeannotte had previously delivered a controlled substance, nor that Jeannotte had any criminal predisposition to deliver a controlled substance. The court also found Rigg encouraged Jeannotte to deliver the controlled substance, and Jeannotte's argument of entrapment, while not accepted by the jury as a defense, was persuasive as a mitigating circumstance.
The record supports these findings. Rigg had significant incentives to help facilitate drug investigations and arrests. Jeannotte, although a cocaine user, was not a dealer. Rigg hounded Jeannotte to sell him cocaine until Jeannotte relented. This evidence was sufficient to persuade a fair minded person that Jeannotte did not instigate the drug deal and was actually pushed into it by Rigg. Under the above cited case law, the trial court's findings, upon which the exceptional sentence is based, are sustainable because substantial evidence appears in the record supporting those findings.
2. Departure From the Standard Range is Justified in This Case as a Matter of Law
The second part of RCW 9.94A.210(4)(a) requires us to independently determine, as a matter of law, if the sentencing judge's reasons justify the imposition of a sentence outside the presumptive range. The reasons must be "substantial and compelling," RCW 9.94A.120(2), and must take into account factors other than those which are necessarily considered in computing the presumptive range for the offense. State v. Nordby, 106 Wash.2d 514, 518, 723 P.2d 1117 (1986); Nelson, 108 Wash.2d at 498-99, 740 P.2d 835. This criterion is met because the elements of entrapment are specifically listed in RCW 9.94A.390(1)(d) as mitigating circumstances which a sentencing court may consider in exercising its discretion to impose an exceptional sentence. We recognized as much in Nelson, holding:
Lack of predisposition and inducement by others to commit the crime is one of the *1198 mitigating factors listed under RCW 9.94A.390[(1)(d)]. Therefore, as a matter of law, this factor justifies the imposition of a nonstandard sentence.

Nelson, 108 Wash.2d at 499, 740 P.2d 835 (emphasis added).
3. Is the Exceptional Sentence Below the Standard Range Imposed By the Trial Court Too Lenient?
In determining whether an exceptional sentence is clearly too excessive or too lenient, we apply the "abuse of discretion" standard. Pascal, 108 Wash.2d at 138, 736 P.2d 1065. Under the abuse of discretion standard, a sentence will be adjudged "clearly too lenient" only if the trial court's action was one that no reasonable person would have taken. Id. at 139, 736 P.2d 1065. Under the facts of this case, it cannot be said the trial court abused its discretion in considering the failed entrapment defense. Although Jeannotte's attempted assertion of the affirmative defense of entrapment failed to win over the jury (i.e., he failed to meet the burden of asserting an affirmative defense), the record nevertheless contains evidence he was not predisposed to deliver the cocaine to the informant and he was induced into the delivery by the informant. Under Nelson, as these factors justify imposition of a nonstandard sentence, it cannot be said no reasonable person would have imposed an exceptional sentence below the standard range on Jeannotte as the trial court did in this case.
The Court of Appeals' holding that the trial court improperly considered Jeannotte's failed entrapment defense for sentencing purposes cannot be sustained.[4]

CONCLUSION
The SRA expressly authorizes trial courts to consider a failed defense as a mitigating factor in imposing an exceptional sentence below the standard range, regardless of whether the defendant pleaded guilty to the charges or the jury convicted the defendant and rejected the proferred defense. This result is consistent with the Legislature's direction in RCW 9.94A.390(1) that failed defenses may constitute mitigating factors. We affirm the Court of Appeals' decision as to Jeannotte's convictions, but reverse the sentencing portion of that decision, and reinstate the trial court's exceptional sentence.
DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, MADSEN, ALEXANDER and SANDERS, JJ., concur.
NOTES
[1] Around February 1994, because of Rigg's "satisfactory work for the Sheriff's Department" in three controlled buys, the police told Rigg his assistance would no longer be needed, he would not be charged for his grow operation in his home, and he would not lose his house.
[2] In State v. Pascal, 108 Wash.2d 125, 137, 736 P.2d 1065 (1987), we stated:

Here, the defendant at trial claimed that she killed [her assailant] in self-defense and that she suffered from battered woman syndrome. Although this defense failed and she was convicted of manslaughter, the trial judge in performing his sentencing function could evaluate the evidence of these mitigating factors and find that her actions significantly distinguished her conduct from that normally present in manslaughter. The trial court properly considered these factors.
[3] In Hutsell, we rejected voluntary use of drugs or alcohol amounting to dependence or intoxication as a mitigating factor under RCW 9.94A.390(1)(e). Hutsell, 120 Wash.2d at 921, 845 P.2d 1325.
[4] In sentencing Jeannotte, the trial court used an offender score of one for the possession charge and an offender score of zero for the delivery charge. The State asserted before the Court of Appeals the delivery charge calculation was in error because the trial court failed to count Jeannotte's possession conviction, a current offense, in calculating the offender score for the delivery conviction, and the trial court made no finding that the possession and delivery convictions encompass the same criminal conduct. RCW 9.94A.400(1)(a).

The Court of Appeals noted the error, remanding the case for recalculation of the delivery charge offender score stating:
RCW 9.94A.400(1)(a) requires the court to use current convictions the same as prior convictions in computing the offender score unless it expressly finds they encompass the same criminal conduct. Here, there was no such finding.
Jeannotte, No. 14406-2-III, unpublished op. at 7-8, 1996 WL 736255. See Matter of Johnson, 131 Wash.2d 558, 568, 933 P.2d 1019 (1997) (a sentencing court acts without statutory authority under the Sentencing Reform Act of 1981 when it imposes a sentence based on a miscalculated offender score); State v. Parker, 132 Wash.2d 182, 189, 937 P.2d 575 (1997) (when the sentencing court incorrectly calculates the standard range before imposing an exceptional sentence, remand is the remedy unless the record clearly indicates the sentencing court would have imposed the same sentence anyway).
At oral argument, counsel for the State indicated if we decided to reverse the Court of Appeals on the failed entrapment defense issue in sentencing, he would, in effect, choose not to request a remand of the case to have the delivery score properly calculated and Jeannotte resentenced as he believed there was little likelihood the trial court would impose a different exceptional sentence. We treat this issue as abandoned and do not reach it. See State v. Williams, 96 Wash.2d 215, 226, 634 P.2d 868 (1981) (where no argument is made on an issue it is considered abandoned); Seattle First Nat'l Bank v. Shoreline Concrete Co., 91 Wash.2d 230, 243, 588 P.2d 1308 (1978) (Supreme Court will not consider issues apparently abandoned at trial and clearly abandoned in the Supreme Court).