15 P.3d 1271 (2001)
142 Wash.2d 631
STATE of Washington, Respondent,
v.
Randall Louis FERGUSON, Petitioner.
No. 68899-1.
Supreme Court of Washington, En Banc.
Argued October 19, 1999.
Decided January 4, 2001.
As Amended January 8, 2001.
Reconsideration Denied February 21, 2001.
Suzan L. Clark, Vancouver, WA, for Petitioner.
Arthur D. Curtis, Clark County Prosecutor, Patricia L. Mahre, Kelli E. Osler, Clark County Deputy Prosecutors, Vancouver, WA, for Respondent.
*1272 SMITH, J.
Petitioner Randall Louis Ferguson seeks review of a decision of the Court of Appeals, Division Two, which affirmed his Clark County Superior Court conviction for assault in the second degree under former RCW 9A.36.021(1)(e) (1988), which defined the offense as exposing or transmitting the human immunodeficiency virus (HIV) to another person with intent to inflict bodily harm. The Court of Appeals concluded the record supports the trial court's finding of deliberate cruelty which justified Petitioner's aggravated exceptional sentence of 120 months. This court granted review. We affirm in part and reverse in part.

QUESTION PRESENTED
The question presented in this case is whether an aggravated exceptional sentence for assault in the second degree under former RCW 9A.36.021(1)(e), intentionally exposing HIV to another person with intent to inflict bodily harm, was properly imposed because Petitioner's exposure of the victim to HIV evidenced "deliberate cruelty."

STATEMENT OF FACTS
On January 26, 1988, Petitioner Randall Louis Ferguson visited the HIV unit of the Southwest Washington Health Department and asked to be tested for HIV.[1] Prior to giving his blood sample, Petitioner received "pre-test" counseling on HIV and acquired immunodeficiency syndrome (AIDS).[2] Petitioner has a history of drug addiction and intravenous use of cocaine.[3]
On February 13, 1988, Petitioner was informed in person that he tested positive for HIV.[4] He then received "post-test" counseling and was again told how the virus is transmitted and that he must use a condom during sexual intercourse to avoid transmitting the virus to others.[5] On July 24, 1991, Petitioner obtained additional counseling on HIV and AIDS from Dr. Karen Steingart, M.D., health officer for the Southwest Washington Health Department.[6]
In May 1994, Petitioner met Ms. Carrie Faye Dietz.[7] At that time, he told her he *1273 was HIV positive.[8] They subsequently engaged in sexual intercourse on three occasions.[9] The third occasion, which is the sole event upon which this case is based, was one time at the Fort Vancouver Motel in Vancouver, Washington[10] "between June 15, 1994 and July 15, 1994."
On the encounter in the Fort Vancouver Motel, according to Ms. Dietz, Petitioner used a condom,[11] but removed it at some time during sexual intercourse. During the act they stopped to inject cocaine, but did not resume immediately because Ms. Dietz could not find a vein in which she could inject the drug.[12] She was not injected with cocaine, but Petitioner did inject himself.[13] During this time, Ms. Dietz saw him move his hand toward his groin area and then to his side in such a way that he could have removed the condom.[14] They resumed intercourse and she realized Petitioner had ejaculated in her vagina instead of in the condom.[15] She saw the condom at the side of the bed.[16]
On June 28, 1995, nearly a year later, the Clark County Prosecuting Attorney filed an information[17] in the Clark County Superior Court charging Petitioner Ferguson with assault in the second degree in violation of former RCW 9A.36.021(1)(e).[18] The information read:
RANDALL LOUIS FERGUSON, in the County of Clark, State of Washington, between June 15, 1994 and July 15, 1994, with intent to inflict bodily harm, did [intentionally] expose [or transmit] human immunodeficiency virus as defined in chapter 70.24 RCW, to Carrie Dietz, a human being, in violation of RCW 9A.36.021 (1)(e), contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Washington.
This crime is a "most serious offense" pursuant to the Persistent Offender Accountability Act (Chapter 1, Section 3 Laws of 1994).[19]
Over Petitioner's objection, the trial court, the Honorable Edwin L. Poyfair, allowed Respondent State of Washington to call six women as witnesses in the trial.[20] The State *1274 also called several of Petitioner's male acquaintances as witnesses. One acquaintance, Donald E. Earley, testified he first met Petitioner in 1986 or 1987, and that sometime in 1991 or 1992 Petitioner told him he was HIV-positive.[21] According to Mr. Earley, when he asked Petitioner "what about all these women that [you are] screwing?" Petitioner responded, "Fuck them. If they get it they deserve it."[22]
A second acquaintance, Kenneth W. Miller, testified he first met Petitioner in 1990 and formed a close friendship with him that lasted until 1995.[23] Mr. Miller testified that between 1991 and 1995 he talked to Petitioner about his HIV-positive status on numerous occasions.[24] In discussing whether he might infect others with HIV, Petitioner stated his sexual partners "were a bunch of bag bitches and he wasn't worried about [infecting them], he was going to party and have a good time."[25] He also testified that Petitioner referred to Ms. Dietz as a "bag bitch."[26]
A third acquaintance, Mark Wilson, testified he first met Petitioner in the early 1980's and that around May 28, 1992, while he and Petitioner were partially confined in a Tacoma pre-release work program,[27] he had "a specific conversation with [Petitioner] regarding his HIV status[.]"[28] During that conversation Petitioner "said he just felt like he wanted to take everybody he could down with him."[29]
Detective Mitchel Lackey, Camas Police Department, testified concerning two interviews he conducted of Petitioner on April 24, 1995 and May 19, 1995.[30]
In the April interview, Petitioner admitted he was told in 1988 that he was HIV-positive and needed to use a condom each time he had sexual intercourse.[31] Petitioner told Detective Lackey "he did not like to use condoms" because "condoms impeded his gratification from sex," and "he had a hard time managing [an] erection if he used condoms while using the drug cocaine."[32]
In the May interview, Petitioner acknowledged a sexual relationship with Ms. Dietz in the summer of 1994.[33] Although Petitioner initially stated they always used condoms during sexual intercourse, he later changed his statement and said that during their last two encounters "he had removed his condom," which "had become sloppy and loose," to exchange it for a new one.[34] He at first admitted, but immediately denied, ejaculating inside Ms. Dietz.[35] Petitioner explained that "he had re-entered her vagina with his penis without a condom on" because "he needed to have that skin-to-skin contact in order to get his erection back."[36] At the end of the interview, as Detective Lackey was about to leave, "he [Petitioner] stood and shouted, `Hey, I remember the condom *1275 broke,' and said `You ask her that. The condom broke.'"[37]
Petitioner testified at trial. He stated he had known he was HIV-positive since 1988, but did not know from whom he acquired the virus.[38] He was heavily involved in the drug culture from 1989 to 1992.[39] However, he said that in 1994 he disclosed his HIV status to everyone with whom he had sexual intercourse and he did not engage in intercourse without using a condom.[40] He testified to having sexual intercourse with Ms. Dietz on three occasions in 1994.[41] On the first two occasions, he used a condom from start to finish.[42] On the third occasion, he lost his erection while she was having difficulty injecting cocaine.[43] To regain his erection, he removed the condom and rubbed his penis in her thigh area. He put on a new condom, resumed intercourse and ejaculated into the condom.[44]
On September 26, 1996, after an eight-day trial, the jury found Petitioner "guilty" of assault in the second degree as charged in the amended information.[45] On October 17, 1996, although the standard range for his offense was 53-70 months based upon a seriousness level of IV and an offender score of 8,[46] the trial court imposed an exceptional sentence of 120 months.[47] On the stock finding of fact form, the trial court merely indicated with a &check;-check the short sections labeled "deliberate cruelty" and "particular vulnerability" as the basis for its sentence.[48] The court, orally addressing deliberate cruelty, elaborated on its determination to impose an aggravated exceptional sentence:
I find ... not once but twice, based on that which has been before this Court that she can rememberand again I speak of Carrie Dietzof the lack of the compassion which [Petitioner] stand[s] up and so adamantly stated that [he] ha[s] for mankind, that there was deliberate cruelty.... I ... believe that it is most appropriate and that you do qualify under the aggravating circumstances of the statute and as such this Court will order an exceptional sentence.[[49]]
The trial court made the following comment concerning particular vulnerability:
I believe that, based on your ability to communicate, to converse in a way that rang true in the heart of those that needed to hear it, needed to depend upon it. You preyed upon them. And they were specifically of particular vulnerability. Specifically, Ms. Dietz and the love that you showed for her and what she, in fact, attempted to reciprocate, I do find particular vulnerability, but I find it in that way, not in the drug way.[[50]]
In referring to the "Jane Doe" witnesses who testified at trial, the court stated:

*1276 When I look, I see that the evidence is clear.... I believe in total that you were, and may still be, a very angry person, a person that had a mission a mission to get even, to be vindictive, to bring down, if at all possible, those who you, quite truthfully, characterized as people who loved you. And I truly believe they did. And I think many of them still do.
. . . .
[Y]ou had no care for human life, and I think including your own. You attempted, by a form of intelligent conspiracy, to invoke yourself upon others. In doing so you caused people to rely, to depend, to again commit to you.... And yet what you gave to some is totally a death sentence.[[51]]
On November 12, 1996, Petitioner filed a notice of appeal to the Court of Appeals, Division Two.[52] On November 5, 1999, the Court of Appeals affirmed his conviction and sentence, concluding that the record supports the trial court's finding of deliberate cruelty and the finding of deliberate cruelty justified Petitioner's exceptional sentence. The Court of Appeals, in an unpublished opinion, the Honorable J. Dean Morgan writing, stated that "[b]ecause the trial court erred by relying on particular vulnerability, we must decide whether to remand for resentencing.... Here, we are satisfied that the trial court would reimpose the same sentence on the basis of deliberate cruelty as found in State v. Farmer [116 Wash.2d 414, 805 P.2d 200 (1991)]. Thus, we affirm rather than remand.[53]"
Petitioner then sought review by this court, which was granted on May 3, 2000 only as to the sentencing issue.[54]

DISCUSSION
Petitioner Randall Louis Ferguson contends the trial court erred in finding deliberate cruelty as a factor in imposing his 120-month aggravated exceptional sentence for his second degree assault conviction under former RCW 9A.36.021(1)(e),[55] and seeks remand *1277 for resentencing within the standard range.[56] He argues the trial court erroneously imposed an aggravated exceptional sentence because the factor supporting its findingdeliberate crueltywas an element of his offense: intentionally exposing HIV to another person with intent to inflict bodily harmand the level of cruelty could not be distinguished from any other assault charged under the same statute.[57] Respondent State of Washington asserts to the contrary that the trial court properly determined Petitioner's conduct constituted deliberate cruelty, which was a substantial and compelling reason justifying imposition of the aggravated exceptional sentence.[58] The Court of Appeals, relying upon this court's decision in State v. Farmer,[59] affirmed Petitioner's exceptional sentence.
Under the Sentencing Reform Act of 1981 (SRA), a court must generally impose a sentence within the standard range for an offense.[60] However, there are exceptions to this general rule.[61] The SRA authorizes a court to impose a sentence outside the standard range if it finds, consistent with the purposes of the SRA,[62] there are "substantial and compelling reasons justifying an exceptional sentence."[63] The SRA provides a nonexclusive list of aggravating and mitigating circumstances "which the court may consider *1278 in the exercise of its discretion to impose an exceptional sentence," but these factors are only illustrative.[64] When imposing an aggravated exceptional sentence, the trial court may consider whether "[t]he defendant's conduct during the commission of the current offense manifested deliberate cruelty to the victim."[65]
In this case, the trial court relied upon two "substantial and compelling reasons" to justify Petitioner's exceptional sentence: deliberate cruelty and particular vulnerability.[66] On October 17, 1996 the trial court signed a stock form "Findings of Fact on Imposition of Exceptional Sentence," indicating an original notation of only a &check;-check on the form typewritten document indicating justification for the sentence:
The following facts are found to be substantial and compelling reasons justifying an exceptional sentence outside the standard sentencing range:
&check; 1. Deliberate Cruelty.
Legal Authority:
RCW 9.94A.390 (2)(a)
State v. Tierney, 74 Wash.App. 346, 872 P.2d 1145 (1994)
State v. Scott, 72 Wash.App. 207, 866 P.2d 1258 (1993)
. . . .[67]
We do not address the finding of particular vulnerability inasmuch as the Court of Appeals, in its unpublished opinion, concluded that finding was not supported by the record.[68]
Deliberate cruelty has been defined as behavior "not usually associated with the commission of the offense in question,"[69] or as "gratuitous violence or other conduct which inflicts physical, psychological, or emotional pain as an end in itself."[70] A finding of deliberate cruelty may be based on acts accompanied by a more culpable mental state than was contemplated in setting the standard range for the charged offense.[71] A defendant's intent may support an exceptional sentence.[72]
Review of a court's imposition of an exceptional sentence is governed by RCW 9.94A.210(4).[73] An appellate court determines the appropriateness of an exceptional sentence by answering three questions under RCW 9.94A.210(4): (1) whether the reasons *1279 given by the sentencing judge are supported by evidence in the record, under the clearly erroneous standard of review; (2) whether the reasons justify a departure from the standard range, under de novo review, as a matter of law; or (3) whether the sentence is clearly too excessive or too lenient, under the abuse of discretion standard of review.[74]
Petitioner claims the trial court erred because (1) the record does not support the court's finding of deliberate cruelty; (2) the reasons provided by the court do not justify an exceptional sentence as a matter of law; and (3) the court abused its discretion by imposing a sentence that is clearly too excessive.[75]
The first question under RCW 9.94A.210(4) is a factual inquiry which requires the appellate court to uphold the sentencing judge's reasons if they are not clearly erroneous.[76] The trial court only indicated by &check;-check its selection of "deliberate cruelty" on the stock finding of fact form.
In this case, Petitioner was convicted by the jury of the charged offense which was intentionally exposing the human immunodeficiency virus (HIV) to another person, Ms. Dietz, with intent to inflict bodily harm. The jury obviously concluded it was a deliberate and intentional act with the consequence of inflicting bodily harm upon Ms. Dietz by exposing her to HIV.
The trial court indicated on the finding of fact form and in its oral statements on the record that its finding was based upon deliberate cruelty.[77] The court characterized the conductPetitioner's intentionally exposing Ms. Dietz to HIVas deliberate cruelty. The essential question before this court is whether the facts required for proof of the elements of the charged offense may also be used to justify an exceptional sentence based upon "deliberate cruelty."
This court has stated that "factors inherent in the crimeinherent in the sense that they were necessarily considered by the Legislature [in establishing the standard sentence range for the offense] and do not distinguish the defendant's behavior from that inherent in all crimes of that typemay not be relied upon to justify an exceptional sentence...."[78] An element of the charged offense may not be used to justify an exceptional sentence.[79] An exceptional sentence *1280 is not justified by mere reference to the very facts which constituted the elements of the offense proven at trial.
In this case, conviction of the offense of exposing another person to HIV with intent to do bodily harm leaves no room for an additional finding of deliberate cruelty as justification for an exceptional sentence. A finding by the trial court that Petitioner's act constituted deliberate cruelty cannot be used to elevate the sentence to an aggravated exceptional sentence because intent to do bodily harm is an element of the offense charged under former RCW 9A.36.021(1)(e), and was already considered by the Legislature in establishing the standard sentence range. The trial court's finding of deliberate cruelty cannot be considered an additional aggravating circumstance and is not justification for the exceptional sentence.
A trial court exceeds its authority when it relies upon reasons that are not substantial or compelling.[80] To the extent the sentence is based upon reasons insufficient to justify an exceptional sentence, it is not authorized by law and the matter must be remanded for resentencing within the standard range.[81] In this case, the Court of Appeals was in error in affirming the trial court's imposition of Petitioner's exceptional sentence based upon its finding of deliberate cruelty. Because Petitioner's 120-month sentence is a significant departure from the standard range of 53 to 70 months,[82] remand and resentencing is required.
The second question under RCW 9.94A.210(4) requires an appellate court to determine, as a matter of law, whether the sentencing judge's articulated reasons justify imposition of a sentence outside the standard range.[83] In determining whether a factor legally supports departure from the standard sentence range, this court employs a two-part test: first, a trial court may not base an exceptional sentence on factors necessarily considered by the Legislature in establishing the standard sentence range;[84] and second, the asserted aggravating factor must be sufficiently substantial and compelling to distinguish the charged offense from others in the same category.[85]
The Court of Appeals reasoned this case was analogous to State v. Farmer. In that case, the defendant was convicted of two counts of sexual exploitation of a minor and of patronizing a juvenile prostitute.[86] Both Mr. Farmer and Petitioner Ferguson knew or believed they were HIV positive, but yet engaged in sexual activity or intercourse. The trial court in this case, as the trial court did in Farmer, determined the actions of the defendant constituted deliberate cruelty which was a substantial and compelling reason warranting an aggravated exceptional sentence.
*1281 This court, in upholding Mr. Farmer's exceptional sentence based upon a finding of deliberate cruelty, stated:
[B]ased on the testimony of [two witnesses], the trial court found Farmer knew or believed he was infected with the AIDS virus [sic] at the time he engaged in sexual activity with Eric and Jim. Thus, the court found Farmer willingly exposed both minors to the AIDS virus [sic] without regard for their welfare. The court found this action constituted a deliberate, cruel and malicious act that could result in their deaths. RCW 9.94A.390(2)(a) provides that deliberate cruelty to a victim during the commission of a crime is an aggravating circumstance justifying an exceptional sentence. Consequently, ... there were sufficiently compelling reasons warranting the exceptional sentence.[87]
This court accepted Mr. Farmer's knowing exposure or transmission of HIV to another person as justification for the trial court's finding of deliberate cruelty. But Mr. Farmer was not charged with the offense of knowing exposure to or transmitting HIV. Although the same definition of "deliberate cruelty" may be applied in this case, State v. Farmer is distinguishable on its facts. The offenses for which Mr. Farmer was convicted (sexual exploitation of a minor and patronizing a juvenile prostitute) did not manifestly include the element of intent to do bodily harm.
In this case Petitioner was charged with intent to inflict bodily harm by exposing the human immunodeficiency virus (HIV) to another human being (Ms. Carrie Dietz) as specified under former RCW 9A.36.021(1)(e). In this case, the offense for which Petitioner was charged and for which he was convicted implicitly contains elements which constitute "deliberate cruelty" as approved by this court in Farmer: willing exposure to HIV without regard to the welfare of a victim constituting "a deliberate, cruel and malicious act that could result in" death of the victim.
In this case, the State was required to prove (and did prove) beyond a reasonable doubt that Petitioner, with intent to inflict bodily harm, exposed [the] human immunodeficiency virus (HIV) to Carrie Dietz, a human being. Former RCW 9A.36.021(1)(e) made that conduct criminal. The information filed in this case charged only the conduct of Petitioner with Ms. Carrie Dietz "between June 15, 1994 and July 15, 1994." The evidence established only one sexual encounter during that period in Vancouver, Washington. Ms. Dietz was well aware that Petitioner was HIV-positive. During the specified sexual encounter (combined with intravenous drug use), Petitioner either knowingly or carelessly exposed Ms. Dietz to the virus. The jury concluded he, with intent to inflict bodily harm, knowingly exposed the human immunodeficiency virus to her. The elements of the offense itself cannot be used as the basis for an aggravated exceptional sentence merely by labeling the prohibited conduct "deliberate cruelty."
The third question under RCW 9.94A.210(4) examines whether the resulting exceptional sentence is clearly excessive. A sentence is considered clearly excessive only if the trial court abused its discretion in establishing the length of the sentence.[88] There is an abuse of discretion when, under the circumstances, no reasonable person would adopt the position taken by the trial court or it is based upon untenable grounds.[89] It is not necessary for us to discuss this question because of the conclusion we reach.

SUMMARY AND CONCLUSIONS
Under RCW 9.94A.210(4), review of an exceptional sentence requires answers to three questions. The reviewing court asks (1) whether the aggravating or mitigating factors are supported by the record (clearly *1282 erroneous standard of review); (2) whether the factors justify a departure from the standard range (de novo review as a matter of law); or (3) whether the sentence is clearly too lenient or too excessive (abuse of discretion standard). The sentencing court may impose an exceptional sentence if it finds there are substantial and compelling reasons supporting a sentence outside the standard range.
In sentencing Petitioner Ferguson to serve 120 months for his second degree assault conviction, the trial court exceeded the standard range of 53 to 70 months for that offense. To justify this departure, the court merely checked "deliberate cruelty" (and particular vulnerability) on a stock form and orally announced that exposing another to HIV constituted an act of "deliberate cruelty." Petitioner contends such a determination violates the provisions of the SRA, specifically the requirements of RCW 9.94A.210(4), because the factor supporting the trial court's findingdeliberate cruelty was an element of his offense: with intent to inflict bodily harm, he exposed HIV to another person.
The essential question before this court is whether the facts required for proof of the elements of the offense charging an intentional act with cruel consequences may also be used to justify an exceptional sentence based upon "deliberate cruelty." This court has stated that "factors inherent in the crimeinherent in the sense that they were necessarily considered by the Legislature [in establishing the standard sentence range for the offense] and do not distinguish the defendant's behavior from that inherent in all crimes of that typemay not be relied upon to justify an exceptional sentence....[90]" An element of the charged offense may not be used to justify an exceptional sentence.
The trial court may not base an aggravated exceptional sentence upon "deliberate cruelty" in this case because intent to do bodily harm by exposing HIV to another person is an element of the offense charged under former RCW 9A.36.021(1)(e) and was already considered in establishing the standard sentence range of 53 to 70 months.
The Court of Appeals determined this case was analogous to State v. Farmer. Both Mr. Farmer and Petitioner Ferguson knew or believed they were HIV-positive, but yet engaged in sexual activity or intercourse. The trial court in this case, as the trial court did in Farmer, determined the actions of the defendant constituted deliberate cruelty. However, this case is distinguishable from State v. Farmer.
In Farmer the defendant was charged with and convicted of sexual exploitation of a minor and patronizing a juvenile prostitute. In this case, Petitioner was charged with and convicted of assault by exposing HIV to another person with intent to do bodily harm. The charged offense in this case implicitly contains the elements of "deliberate cruelty" approved by this court in Farmer: knowing exposure of another person to the AIDS virus [sic] without regard to the welfare of the victim constituting "a deliberate, cruel, and malicious act that could result in" death of the victim.
In this case, the elements of the offense itself cannot be used as the basis for an aggravated exceptional sentence merely by labeling the prohibited conduct as "deliberate cruelty" because Petitioner was convicted of an intentional act charged as assault in the second degree based upon the same facts used by the trial court to conclude Petitioner engaged in "deliberate cruelty" in committing the offense.
We remand this case for resentencing within the standard range.
We affirm the decision of the Court of Appeals, Division Two, which affirmed the Clark County Superior Court conviction of Petitioner Randall L. Ferguson under former RCW 9A.36.021(1)(e), but reverse its conclusion that the trial court properly imposed an aggravated exceptional sentence of 120 months based upon a finding of "deliberate cruelty" which we conclude was inherent in the elements of the charged offense of assault in the second degree.
*1283 GUY, C.J., JOHNSON, MADSEN, ALEXANDER, SANDERS, IRELAND and BRIDGE, JJ., concur.
GROSSE, J.[*] (concurring)
I concur in the result only. The majority opinion sweeps too broadly in its condemnation of this exceptional sentence.
On these facts, I agree that the record does not support the trial court's reasons for an exceptional sentence. There was no conduct on the part of the defendant during the crime for which he was charged that distinguishes it from the conduct proscribed by the statute. However, I believe that the majority opinion can, but should not, be read to prohibit a finding of deliberate cruelty with regard to any charge including the element of intent, not just intentionally transmitting the human immunodeficiency virus (HIV). I am certain that was not the majority's intent.
NOTES
[1] Human immunodeficiency virus (HIV). 3 Report of Proceedings (Sept. 19, 1996) at 84.
[2] The "pre-test" counseling Petitioner received on January 26, 1988, routinely given to all persons seeking testing for HIV at the Southwest Washington Health Department HIV Unit, included discussions on the reasons the person wished to be tested for HIV (identification of risk-factors); whether prior HIV testing occurred and the result; the extent of the person's knowledge of HIV and AIDS; what HIV and AIDS are, their stages of progression and how they are transmitted (for example, exchange of bodily fluids, sharing needles in the injection of intravenous drugs, and unprotected sexual intercourse); behaviors that reduce the risk of transmitting HIV (for example, use of condoms during sexual intercourse from start to finish, use of new or clean needles, and having a monogomous relationship or abstinence from sexual intercourse); and the absence of a cure for HIV. Id. at 84-92 and 106.
[3] See Id. at 121; 6 Report of Proceedings (Sept. 25, 1996) at 9.
[4] "HIV-positive" refers to persons who carry the antibodies to HIV. Petitioner's medical record at the Health Department reflected a second HIV positive test result on August 14, 1991. 3 Report of Proceedings (Sept. 19, 1996) at 97 and 100-03.
[5] During the "post-test" counseling Petitioner received at the Southwest Washington Health Department HIV Unit on February 13, 1988, topics previously discussed in "pre-test" counseling were reviewed in addition to the results of the HIV test (a person receiving a positive HIV test result would be told, in general terms, what to do and what not to do concerning the virus and how it can be transmitted); the importance of notifying past and present sexual partners; how to stay healthy; referrals to physicians for medical treatment; support groups; and literature on HIV and AIDS. Id. at 97-100.
[6] At the counseling session conducted by Dr. Steingart, the only health officer for Clark, Skamania, and Klickitat counties, Petitioner was advised of behaviors he should refrain from, which included sexual intercourse without a condom. 5 Report of Proceedings (Sept. 24, 1996) at 31-47. During her testimony, Dr. Steingart explained how HIV could be exposed or transmitted and that the pre-ejaculatory fluids of an HIV carrier are known to expose or transmit the virus. Id. at 24-28.
[7] Ms. Dietz testified she used drugs prior to May 1994 and that methamphetamine was her drug of choice. 4 Report of Proceedings (Sept. 23, 1996) at 118-20.
[8] Id.
[9] The first time Petitioner and Ms. Dietz had sexual intercourse was in May 1994, the day they met, in a parked van at Leverich Park in Vancouver, Washington. Ms. Dietz testified that on that occasion Petitioner used a condom from start to finish and they both injected cocaine that he supplied in the middle of the act. Id. at 118-23. Their second sexual encounter occurred a month later at a motel in Portland, Oregon. They both injected cocaine during intercourse and Petitioner used a condom. Ms. Dietz thought Petitioner may have removed the condom, but was not sure because of her reaction to the cocaine injection. Id. at 124-28.
[10] Id. at 128. Petitioner testified he did not believe he and Ms. Dietz were at the Fort Vancouver Motel in Vancouver because he had been banned from the premises "completely" by the management prior to his meeting her. 6 Report of Proceedings (Sept. 25, 1996) at 32.
[11] 4 Report of Proceedings (Sept. 23, 1996) at 129.
[12] Id. at 128-30.
[13] Id. at 130.
[14] Id. at 131-33.
[15] After intercourse was completed, Ms. Dietz sat up and "felt [the] warm liquid [his semen] inside of [her] coming out" and went to the bathroom to clean herself. Id. at 133-35.
[16] Id. at 134.
[17] Clerk's Papers at 1.
[18] Former RCW 9A.36.021(1)(e) cited in the information read:

(1) A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree:
". . . .
"(e) With intent to inflict bodily harm, exposes or transmits human immunodeficiency virus as defined in chapter 70.24 RCW[.]"
[19] Clerk's Papers at 1. On September 16, 1996, the court allowed an oral amendment to the information striking the words "intentionally" and "or transmit." These words are bracketed to show the deletion. 1 Report of Proceedings (Sept. 19, 1996) at 5-7.
[20] On the issue of Petitioner's "intent to inflict bodily harm" upon Ms. Dietz, the State presented the six women who testified concerning Petitioner's use and non-use of condoms during their sexual relationships with him. Over Petitioner's objection, the trial court directed that the women be referred to only as "Jane Doe." Although Petitioner claims in his petition for review that the trial court erred in allowing the testimony of the Jane Does under ER 404(b) and requiring him to refer to them as Jane Does, this court granted review only on the sentencing issue.
[21] 4 Report of Proceedings Clark County Superior Court (Sept. 23, 1996) at 76-77.
[22] Id. at 78.
[23] Id. at 87-88.
[24] Id. at 89-91.
[25] "Bag bitch" is street vernacular for a woman who would do anything to obtain drugs. Id. at 92-93.
[26] Id. at 93.
[27] 6 Report of Proceedings (Sept. 25, 1996) at 14.
[28] 4 Report of Proceedings (Sept. 24, 1996) at 118.
[29] Id.
[30] Id. at 75-76 and 85-87.
[31] Petitioner told Detective Lackey that Ms. Joanne Christ of the Southwest Washington Health Department told him he was HIV-positive. Id. at 85-86.
[32] Id. at 86-87.
[33] Petitioner acknowledged he had sexual intercourse with Ms. Dietz on three occasionsonce in a park and twice in motel rooms. Id. at 88-89.
[34] Id. at 89-90.
[35] Id. at 90.
[36] Id. at 90-91.
[37] Id. at 91.
[38] 6 Report of Proceedings (Sept. 25, 1996) at 8.
[39] Petitioner acknowledged he did have sexual relations with the women called by the State as witnesses, and admitted he had lied about his HIV status to some of them while not disclosing his status to others. Id. at 10-11. Three other women were called as witnesses for Petitioner. They testified they knew of his HIV status before engaging in sexual intercourse with him and that he used protection. Id. at 72-84; Report of Proceedings (Sept. 25, 1996) Untitled Volume at 27-42.
[40] 6 Report of Proceedings Clark County Superior Court (Sept. 25, 1996) at 19-20.
[41] Id. at 21.
[42] Id. at 28-29.
[43] Id. at 34-35.
[44] Id. at 36-37.
[45] Clerk's Papers (Verdict Form) at 414; see also Clerk's Papers at 416.
[46] RCW 9.94A.320 indicates assault in the second degree (RCW 9A.36.021) with a seriousness level of IV; RCW 9.94A.310 indicates Petitioner's statutory maximum sentence for his second degree assault conviction would be 70 months, with a standard range of 53-70 months.
[47] Clerk's Papers (Judgment and Sentence) at 473-86.
[48] Id. (Findings of Fact on Imposition of Exceptional Sentence) at 498-500.
[49] Report of Proceedings (Oct. 17, 1996) at 47.
[50] Id. at 47. This issue is not further addressed in this opinion.
[51] Id. at 45-46.
[52] Notice of Appeal to Court of Appeals Division Two (Nov. 12, 1996). The court reporter was unable to prepare the trial transcript. Other court reporters, using the original reporter's notes, prepared it. That narrative transcript, containing some gaps, was used by the Court of Appeals. State v. Ferguson, 97 Wash.App. 1080, 1999 WL 1004992, at *4 (Wash.Ct.App.1999).
[53] Ferguson, 97 Wash.App. 1080, 1999 WL 1004992, at *9. The Court of Appeals, citing the requirements of "particular vulnerability" under RCW 9.94A.390(2)(b), reasoned that the only possible claim of vulnerability of the victim is that Petitioner had sexual intercourse with a partner who was under the influence of drugs. In a footnote, the court rejected the trial court's proposition that Petitioner's partners were particularly vulnerable because they felt "love" for him. Ferguson, 97 Wash.App. 1080, 1999 WL 1004992, n. 43 at *8; see Report of Proceedings (Oct. 17, 1996) at 47. The court stated, "[i]t is clear ... that the partner was an adult who at all times remained able to willingly participate, and that the partner was not unconscious or otherwise incapacitated. We hold that the record will not support the trial court's finding of particular vulnerability." Ferguson, 97 Wash.App. 1080, 1999 WL 1004992, at *8.
[54] Order, Supreme Court of Wash. (May 3, 2000).
[55] Former RCW 9A.36.021 provided in pertinent part:

`(1) A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree:
". . . .
"(e) With intent to inflict bodily harm, exposes or transmits human immunodeficiency virus as defined in chapter 70.24 RCW[.]
RCW 70.24.017 provides in pertinent part:
"(1) `Acquired immunodeficiency syndrome' or `AIDS' means the clinical syndrome of HIV-related illness as defined by the board of health by rule.
". . . .
"(6) `HIV-related condition' means any medical condition resulting from infection with HIV including, but not limited to, seropositivity for HIV.
". . . .
"(7) `Human immunodeficiency virus' or `HIV means all HIV and HIV-related viruses which damage the cellular branch of the human immune or neurological systems and leave the infected person immunodeficient or neurologically impaired.
". . . .
"(13) `Sexually transmitted disease' means a bacterial, viral, fungal, or parasitic disease, determined by the board by rule to be sexually transmitted, to be a threat to the public health and welfare, and to be a disease for which a legitimate public interest will be served by providing for regulation and treatment. The board shall designate chancroid, gonorrhea, granuloma inguinale, lymphogranuloma venereum, genital herpes simplex, chlamydia, nongonococcal urethritis (NGU), trachomitis, genital human papilloma virus infection, syphilis, acquired immunodeficiency syndrome (AIDS), and human immunodeficiency virus (HIV) infection as sexually transmitted diseases, and shall consider the recommendations and classifications of the centers for disease control and other nationally recognized medical authorities in designating other diseases as sexually transmitted."
In 1997, after the charge in this case, the Legislature elevated this conduct to assault in the first degree. ("A person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm.... [a]dministers, exposes, or transmits to ... another ... the human immunodeficiency virus....") (emphasis added). See Laws of 1997, ch. 196, § 1; RCW 9A.36.011(1)(b).
[56] Petitioner's brief is not clear on his request for remand. See Petition for Discretionary Review at 16-20. The record, however, suggests he is currently serving the portion of his sentence beyond the standard range.
[57] See id. at 20. Petitioner also argues the trial court violated the "real facts doctrine" under RCW 9.94A.370(2) by considering incidents of uncharged crimes involving other victims in imposing his exceptional sentence. He claims those incidents, which the State was unable to prosecute because of expiration of the statute of limitations, were admitted under ER 404(b) at trial, and constitute separate uncharged crimes. We do not address the "real facts" doctrine.
[58] Respondent did not file a supplemental brief in this court. See RAP 13.7(d). The briefs submitted to the Court of Appeals did not address the exceptional sentence issue. However, Petitioner's motion for accelerated review filed in the Court of Appeals on March 11, 1998, and Respondent's response to that motion filed on July 31, 1998, did address the sentencing issue. The Court of Appeals passed the motion for accelerated review on the merits and did not issue a separate order, but addressed it in its unpublished opinion.
[59] 116 Wash.2d 414, 805 P.2d 200 (1991).
[60] RCW 9.94A.120(1).
[61] RCW 9.94A.120.
[62] "RCW 9.94A.010 Purpose. The purpose of this chapter is to make the criminal justice system accountable to the public by developing a system for the sentencing of felony offenders which structures, but does not eliminate, discretionary decisions affecting sentences, and to:

"(1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;
"(2) Promote respect for the law by providing punishment which is just;
"(3) Be commensurate with the punishment imposed on others committing similar offenses;
"(4) Protect the public;
"(5) Offer the offender an opportunity to improve him or herself;
"(6) Make frugal use of the state's and local government's resources; and
"(7) Reduce the risk of reoffending by offenders in the community."
[63] RCW 9.94A. 120(2) and (3) which provide "(2) The court may impose a sentence outside the standard sentence range for that offense if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence. (3) Whenever a sentence outside the standard range is imposed, the court shall set forth the reasons for its decision in written findings of fact and conclusions of law. A sentence outside the standard range shall be a determinate sentence."; State v. Jeannotte, 133 Wash.2d 847, 857, 947 P.2d 1192 (1997); State v. Ha'mim, 132 Wash.2d 834, 839-40, 940 P.2d 633 (1997) (quoting RCW 9.94A. 120(2); State v. Ritchie, 126 Wash.2d 388, 391, 894 P.2d 1308 (1995)).
[64] RCW 9.94A.390.
[65] RCW 9.94A.390(2)(a) which provides "(2) Aggravating Circumstances (a) The defendant's conduct during the commission of the current offense manifested deliberate cruelty to the victim."
[66] Clerk's Papers at 498-500; see Ferguson, 97 Wash.App. 1080, 1999 WL 1004992, at *8.
[67] Clerk's Papers at 498.
[68] See Ferguson, 97 Wash.App. 1080, 1999 WL 1004992, at *8.
[69] State v. Copeland, 130 Wash.2d 244, 296, 922 P.2d 1304 (1996) (quoting State v. Crane, 116 Wash.2d 315, 334, 804 P.2d 10 (citation omitted), cert. denied, 501 U.S. 1237, 111 S.Ct. 2867, 115 L.Ed.2d 1033 (1991)) (citing State v. Payne, 45 Wash.App. 528, 531, 726 P.2d 997 (1986)).
[70] Copeland, 130 Wash.2d at 296, 922 P.2d 1304 (quoting State v. Scott, 72 Wash.App. 207, 214, 866 P.2d 1258 (1993), aff'd. sub nom. State v. Ritchie, 126 Wash.2d 388, 894 P.2d 1308 (1995)); see also State v. Strauss, 54 Wash.App. 408, 418, 773 P.2d 898 (1989); State v. Franklin, 56 Wash. App. 915, 918, 786 P.2d 795 (1989), rev. denied, 114 Wash.2d 1004, 788 P.2d 1078 (1990).
[71] State v. Nordby, 106 Wash.2d 514, 518-19, 723 P.2d 1117 (1986) (Defendant's "especially culpable mental state" was a substantial and compelling reason to depart from the standard range); In Matter of Personal Restraint Petition of Farmer, 119 Wash.2d 597, 599, 835 P.2d 219 (1992) (per curiam) (Defendant's knowledge or belief he had AIDS when he committed the offenses of sexual exploitation of a minor and patronizing a juvenile prostitute evidenced his "reckless disregard" for the lives of both victims and was an "especially culpable mental state" which justified imposition of an exceptional sentence).
[72] State v. Bartlett, 128 Wash.2d 323, 333-34, 907 P.2d 1196 (1995) (Defendant's advance "particularized knowledge" of effect injury would have on victim may support an exceptional sentence); Nordby, 106 Wash.2d at 518-19, 723 P.2d 1117 (Defendant's greater than usual culpability for vehicular assault evidenced when he intentionally drove an automobile into a bicyclist).
[73] Jeannotte, 133 Wash.2d at 855-56, 947 P.2d 1192 (quoting State v. Allert, 117 Wash.2d 156, 163, 815 P.2d 752 (1991)).
[74] Id. at 856, 947 P.2d 1192.
[75] See Petition for Review at 16; Motion for Accelerated Review, Court of Appeals, Division Two (Mar. 11, 1998) at 8-14.
[76] Jeannotte, 133 Wash.2d at 856, 947 P.2d 1192. ("In applying the `clearly erroneous' standard... `[w]e will reverse the trial court's findings only if no substantial evidence supports its conclusion.' Substantial evidence has been defined as `"evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premises."` (citations omitted)").
[77] The court checked deliberate cruelty (and particular vulnerability) on the finding of fact form and declared on the record at sentencing that "there was deliberate cruelty" with regard to Ms. Dietz.
[78] State v. Chadderton, 119 Wash.2d 390, 396, 832 P.2d 481 (1992) (citing David Boerner, Sentencing in Washington § 9.6 (1985)); See State v. Thomas, 138 Wash.2d 630, 635-36, 980 P.2d 1275 (1999) ("[A]n exceptional sentence may not be based on factors inherent to the offense for which a defendant is convicted.") (citing State v. Hicks, 61 Wash.App. 923, 928, 812 P.2d 893 (1991)); State v. Collicott, 118 Wash.2d 649, 658-59, 827 P.2d 263 (1992) (quoting David Boerner, Sentencing in Washington, at 9-13 (1985)) ("[F]acts which constitute elements of the crime of conviction may not be used to justify a departure. Thus the courts have rejected the use of the fact of injury, the age of the victim, and the fact that a burglary was of an occupied dwelling where those facts were elements of the crime and thus used as a basis for determining the applicable presumptive sentence range.")).
[79] See State v. Cardenas, 129 Wash.2d 1, 6-7, 914 P.2d 57 (1996) (Defendant's vehicular assault conviction, which contained the element of "serious bodily injury," in comparison with the victim's severe injuries, was of the type contemplated by the Legislature in setting the standard sentence range and could not justify an exceptional sentence); Chadderton, 119 Wash.2d at 395-96, 832 P.2d 481 (citing State v. Dunaway, 109 Wash.2d 207, 218, 743 P.2d 1237 (1987) (First degree murder contains the premeditation element of "planning," was considered by the Legislature in establishing the standard sentence range, and thus may not be used to justify an exceptional sentence for the charged offense); Nordby, 106 Wash.2d at 519, 723 P.2d 1117 (The severity of a victim's injury in a vehicular assault case could not justify an exceptional sentence); State v. Falling, 50 Wash.App. 47, 54, 747 P.2d 1119 (1987) (The threatened use of a knife during commission of first degree rape is an element of that crime and could not justify an exceptional sentence); see also State v. Pascal, 108 Wash.2d 125, 736 P.2d 1065 (1987) (Since a person's criminal history is a factor used to calculate standard sentence range, and has already been considered by the Legislature in establishing the standard sentence range, it cannot justify an exceptional sentence).
[80] Nordby, 106 Wash.2d at 518, 723 P.2d 1117.
[81] Ha'mim, 132 Wash.2d at 847, 940 P.2d 633; State v. Gaines, 122 Wash.2d 502, 512, 859 P.2d 36 (1993); State v. Pryor, 115 Wash.2d 445, 456, 799 P.2d 244 (1990) (Remand is necessary when a sentencing court places significant weight on an improper factor or when some factors are improper and the sentence significantly deviates from the standard range).
[82] See RCW 9.94A.320; RCW 9.94A.310.
[83] Jeannotte, 133 Wash.2d at 857, 947 P.2d 1192.
[84] State v. Alexander, 125 Wash.2d 717, 725-27, 888 P.2d 1169 (1995) (citing State v. Smith, 123 Wash.2d 51, 57, 864 P.2d 1371 (1993) (quoting State v. Grewe, 117 Wash.2d 211, 215-16, 813 P.2d 1238 (1991) (citation omitted.)) ("Whether the Legislature necessarily contemplated the inclusion of a factor in establishing the standard sentence range depends both on whether the factor is an element of the crime of which the defendant has been convicted, and on whether the factor is considered in the computation of a defendant's standard sentence range under RCW 9.94A.370(1). (citations omitted)").
[85] Alexander, 125 Wash.2d at 725, 888 P.2d 1169.
[86] Farmer, 116 Wash.2d at 414, 418-19, 805 P.2d 200 (1991).
[87] Id. at 431, 805 P.2d 200.
[88] Jeannotte, 133 Wash.2d at 857-58, 947 P.2d 1192.
[89] Ritchie, 126 Wash.2d at 392-93, 894 P.2d 1308 (quoting State v. Oxborrow, 106 Wash.2d 525, 531, 723 P.2d 1123 (1986) ("[F]or action to be clearly excessive, it must be shown to be clearly unreasonable, i.e., exercised on untenable grounds or for untenable reasons, or an action that no reasonable person would have taken.")).
[90] Chadderton, 119 Wash.2d at 396, 832 P.2d 481.
[*] Judge C. Kenneth Grosse is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. IV, § 2(a) (amend.38).