# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46741-1-II |
| Respondent, | |
| v. | |
| FERNANDO PAUL HODGSON, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, P.J. — Fernando Hodgson appeals his convictions and sentences for one count of indecent exposure and one count of first degree child molestation with an aggravating sentencing factor. We affirm his convictions and sentences but, accepting the State's concession, we remand to vacate the improperly imposed sexual assault protection order.

## FACTS

Hodgson moved in with AG and her two minor daughters, WG and MG, in March 2013.[1] Hodgson also has two minor children from a previous marriage. Sometimes Hodgson took care

---

[1] See Division Two General Order 2011-1 ("in all opinions, orders and rulings in sex crime cases, this Court shall use initials or pseudonyms in place of the names of all witnesses known to have been under the age of 18 at the time of any event in the case"). Also, because of the nature of this case, some confidentiality is appropriate. Accordingly, the name of the mother will not be used in the body of this opinion.

of AG's children and, in the evenings, it was routine for either AG or Hodgson to go into MG's room at bedtime.

On November 15, 2013, after Hodgson went to MG's room to say goodnight, MG told her mother that Hodgson had rubbed his penis on her bottom. AG called 911. AG also contacted a friend who came over. Because MG was sleeping when the police arrived and they did not want to frighten her, they asked AG to collect MG's pajamas and her bedding. Within five to ten minutes, AG and her friend gathered the pajamas and bedding into plastic bags and then brought them to the police from the bedroom and a police officer placed them in paper evidence bags.

Both WG and MG met twice with a forensic interviewer. MG reported that Hodgson touched her back with his penis more than once. WG reported that Hodgson came into her room one night, removed his penis from his clothes, and showed it to her.

Mouth swabs from MG and Hodgson, along with MG's bedding, were analyzed by the Washington State Patrol Crime Lab. A mixed sample of Hodgson's deoxyribonucleic acid (DNA), identified as semen, and MG's DNA were located on a floral sheet from MG's bed. The forensic investigator documented results from only two stains on the sheet and did not test for AG's DNA on the sheet. Hodgson did not object at trial to the admission into evidence of MG's bedding.

By amended information, the State charged Hodgson with two counts of first degree child molestation of MG and one count of indecent exposure to WG, a victim under age 14. The State also sought an exceptional sentence based on an aggravating factor that Hodgson used his position of trust to facilitate the commission of both molestation charges.

After a mid-trial CrR 3.5[2] hearing, the trial court ruled that statements Hodgson made to officers during booking were admissible. The court failed to enter written findings of fact or conclusions of law from this hearing.

In September 2014, the jury convicted Hodgson of the first count of child molestation and found that he had abused his position of trust as an aggravating circumstance for that conviction, convicted him of indecent exposure, and acquitted him of the second count of child molestation. The court imposed an exceptional sentence of 75 months because of the abuse of trust aggravating factor on the child molestation conviction.

The court entered a sexual protection order as to WG. The order states,

> The court finds that the defendant has been charged with, arrested for, or convicted of a sex offense as defined in RCW 9.94A.030, a violation of RCW 9A.44.096, a violation of RCW 9.68A.090, or a gross misdemeanor that is, under chapter 9A.28 RCW, a criminal attempt, criminal solicitation, or criminal conspiracy to commit an offense that is classified as a sex offense under RCW 9.94A.030.

Clerk's Papers (CP) at 98.

The court also imposed a life-long term of community custody and set out conditions of his sentence and community custody. The conditions included that Hodgson could not "have any contact with minors without prior approval of [Department of Corrections (DOC)] and sexual deviancy treatment provider" and that he could not "hold any position of trust or authority over minor children without prior approval of DOC and sexual deviancy treatment provider." CP at 28, 30. Hodgson objected to the prohibition of contact with any minors based on his right to parent and to have contact with his two biological children. The State expressed its interest in protecting

---

[2] CrR 3.5 governs the admissibility of an accused's statement.

minors from harm and indicated that Hodgson's children may need protection as well, even though he is their father. The sentencing court told Hodgson that he had the right to (1) work with a DOC treatment provider to make requests about contacting his children and (2) to come in to the court to request modification of the conditions. Hodgson appeals.

ANALYSIS

I. ABUSE OF TRUST NOT INHERENT TO FIRST DEGREE CHILD MOLESTATION

Hodgson argues that his exceptional sentence must be vacated because the abuse of trust aggravating factor is inherent in the crime of first degree child molestation. We disagree.

We review the legal justification for a sentence de novo. *State v. Stubbs*, 170 Wn.2d 117, 124, 240 P.3d 143 (2010). In order for a court to impose a sentence outside the standard range there must be "substantial and compelling reasons" to justify the exceptional sentence, otherwise the sentencing court exceeded its authority to impose the exceptional sentence. RCW 9.94A.535; *State v. Ferguson*, 142 Wn.2d 631, 649, 15 P.3d 1271 (2001). One such reason is found in RCW 9.94A.535(3)(n) that states, "The defendant used his or her position of trust, confidence, or fiduciary responsibility to facilitate the commission of the current offense."

Factors which are inherent to the crime charged may not be relied upon to justify an exceptional sentence. *Ferguson*, 142 Wn.2d at 647-48. A factor is inherent to a crime charged if that factor was necessarily considered by the legislature in establishing the standard sentence range for the offense and does not distinguish the defendant's behavior from that inherent in all crimes of that type. *Ferguson*, 142 Wn.2d at 647. An individual is guilty of first degree child molestation "when the person *has*, or knowingly causes another person under the age of eighteen to have, *sexual contact with another who is less than twelve years old* and not married to the perpetrator

and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.083(1) (emphasis added).

Contrary to Hodgson's argument, an abuse of a position of trust is not a prohibited aggravating factor for this crime. In *State v. Hamby*, 69 Wn. App. 131, 132, 848 P.2d 198 (1993), we held that an abuse of a position of trust was an appropriate aggravating factor upon which to base an exceptional sentence for a first degree child molestation conviction.

And, using one's position of trust is not an inherent element of first degree child molestation under RCW 9A.44.083(1). This statute requires a finding that a defendant knowingly had criminal sexual contact with a minor.[3] In *State v. Anderson*, 171 Wn.2d 764, 766, 771, 254 P.3d 815 (2011), the Supreme Court affirmed a defendant's conviction of first degree child molestation after the State proved the defendant lured a minor into a public restroom and engaged in sexual contact with the minor.[4] There was no finding that the defendant abused a position of trust or relationship with the child victim to commit this offense. *Anderson*, 171 Wn.2d at 766. RCW 9A.44.083(1) and *Anderson* establish that a defendant need not be in a position of trust relative to the minor to commit the crime of first degree child molestation; indeed, they can be a stranger to the minor. 171 Wn.2d at 766. Thus, the trial court here properly relied on the abuse of trust aggravating factor to impose an exceptional sentence.

---

[3] "Sexual contact" means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party. RCW 9A.44.010(2). "Knowingly" means one acts in "such a manner that the actor engaged in prohibited conduct with the knowledge that the social harm that the law was designed to prevent was practically certain to result; deliberately." BLACK'S LAW DICTIONARY 1003 (10th ed. 2014).

[4] The Supreme Court in *Anderson* resolved a different question, but stated the facts set forth above, proven by the State, were sufficient to establish the elements of first degree child molestation. *See* 171 Wn.2d at 770.

## II. SEXUAL ASSAULT PROTECTION ORDER IMPROPERLY ISSUED

Hodgson argues, and the State concedes, that the trial court lacked the statutory authority to impose a sexual assault protection order pursuant to RCW 7.90.150(6)(a) related to his indecent exposure conviction. We accept the State's concession and vacate Hodgson's sexual assault protection order related to WG.

We review a trial court's statutory authority to impose a protection order as part of a sentence de novo. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). A court's authority to issue a sexual assault protection order as part of a defendant's sentence is governed by RCW 7.90.150(6)(a), which states in part that

> [w]hen a defendant is *found guilty of a sex offense as defined in RCW 9.94A.030, any violation of RCW 9A.44.096, or any violation of RCW 9.68A.090*, or any gross misdemeanor that is, *under chapter 9A.28 RCW*, a criminal attempt, criminal solicitation, or criminal conspiracy to commit an offense that is classified as a *sex offense under RCW 9.94A.030*, and a condition of the sentence restricts the defendant's ability to have contact with the victim, the condition shall be recorded as a sexual assault protection order.

(Emphasis added.)

Here, the jury convicted Hodgson of indecent exposure in violation of RCW 9A.88.010(2)(b). Because Hodgson was not convicted of any offense listed in the statutes that authorize the issuance of a sexual assault protection order under RCW 7.90.150(6)(a), the trial court lacked the statutory authority to impose the order. *State v. Barnett*, 139 Wn.2d 462, 464, 987 P.2d 626 (1999). The sexual assault protection order related to WG must be vacated.

### III. No Contact Conditions Were Proper

Hodgson argues that the trial court abused its discretion when it ordered him to have no contact with minor children and to never hold any position of trust or authority over minor children without the approval of the DOC or a sexual deviancy treatment provider. We disagree.

### A. Standard of Review and Rules of Law

Even if a crime-related prohibition interferes with a fundamental constitutional right, because the imposition of such prohibitions is necessarily fact specific and based on the sentencing judge's in-person appraisal of the trial and the offender, the appropriate standard of review is abuse of discretion. *In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 374-75, 229 P.3d 686 (2010). Abuse of discretion occurs when a decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. *State v. Ancira*, 107 Wn. App. 650, 653, 27 P.3d 1246 (2001).

Through the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW, a trial court can impose "crime-related prohibitions and affirmative conditions," as a part of any sentence. Former RCW 9.94A.505(9) (2010). A "'[c]rime related prohibition'" means "an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). Sentencing conditions are usually upheld if reasonably crime related. *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008).

Careful review is required of conditions that interfere with a fundamental constitutional right, like the right to care, custody, and companionship of one's children. *Rainey*, 168 Wn.2d at 374. Such conditions must be "'sensitively imposed'" and must be "'reasonably necessary to accomplish the essential needs of the State and public order.'" *Rainey*, 168 Wn.2d at 374 (quoting *Warren*, 165 Wn.2d at 32). Sentencing courts can restrict fundamental parenting rights by

conditioning a criminal sentence if the condition is reasonably necessary to further the State's compelling interest in preventing harm and protecting children. *Ancira*, 107 Wn. App. at 654. When determining whether a sentencing condition is "reasonably necessary," the interplay of sentencing conditions and fundamental rights is delicate and fact specific such that it does not lend itself to broad statements or bright line rules. *Rainey*, 168 Wn.2d at 377.

B.  CUSTODY CONDITIONS WERE REASONABLY NECESSARY AND PROPERLY TAILORED

The sentencing court ordered Hodgson to have no contact with minor children and to not hold a position of trust or authority over minor children for the rest of his life unless such contact or position was first approved by the DOC and a sexual deviancy treatment provider. Because this condition interferes with Hodgson's fundamental constitutional right to care for and interact with his children, we must determine whether the sentencing court abused its discretion when it determined that the condition is reasonably necessary to further a compelling State interest. *Rainey*, 168 Wn.2d at 374.

First, the State expressed its interest in protecting minors from harm and stated that Hodgson's children may need protection as well, even though he is their father. Prevention of harm to children is a compelling State interest. *Ancira*, 107 Wn. App. at 653-54.

Second, the sentencing court's decision that the sentencing condition was reasonably necessary to further the State's interest in protecting children was not manifestly unreasonable. In *State v. Corbett*, 158 Wn. App. 576, 581-82, 242 P.3d 52 (2010), the defendant was convicted of four counts of first degree rape against his wife's six-and-a-half-year-old daughter from another marriage. The trial court found that Corbett lived with his stepdaughter for seven months and abused his parental role by sexually abusing her. *Corbett*, 158 Wn. App. at 599. As a sentencing

8

condition, the sentencing court prohibited Corbett from having any contact with minors, which necessarily included his biological children—two sons, ages 10 and 14. *Corbett*, 158 Wn. App. at 597.

Corbett challenged his sentencing condition because it prohibited contact with his biological minor children. *Corbett*, 158 Wn. App. at 597. We rejected Corbett's argument and held that the no-contact order was reasonably necessary to protect Corbett's children because of his history of using trust established in a parental role to satisfy his prurient desire to sexually abuse minor children. *Corbett*, 158 Wn. App. at 599. We concluded that his method of intercourse was not gender-specific, and his class of victims were "'minors he parents,'" and "'minor girls,'" such that the sentencing court's decision to prohibit contact with his children, not just his victim or girls alone, was sufficiently supported by the facts and thus was reasonably necessary to effectuate the State's interest in protecting children. *Corbett*, 158 Wn. App. at 600-01.

Here, Hodgson's sexual molestation of MG is analogous to Corbett's actions. Hodgson lived with the victim for eight months and served in a parental role wherein he sometimes picked MG up from school and had access to her because of their bedtime routine. Hodgson's sexual act—rubbing his penis on MG's back and bottom—is not gender specific. Because Hodgson was convicted of having sexual contact with a person under 12, aggravated by using his position of trust to facilitate said act, the sentencing court's decision to prohibit contact with children, including his own, is supported by the facts and demonstrates that this condition was reasonably necessary to effectuate the State's interest to protect children. RCW 9A.44.083(1); RCW 9.94A.535(3)(n).

Hodgson is also incorrect when he argues that the court failed to consider any less restrictive alternatives to his sentencing conditions. Hodgson's conditions are more narrowly tailored than those issued in *Corbett*. Rather than face an absolute bar from any contact with minors, Hodgson may interact with and hold a position of trust or authority over minor children if approved by a DOC representative and a sexual deviancy treatment provider. *Corbett*, 158 Wn. App. at 597. Thus, the sentencing court considered and imposed some mechanism to answer Hodgson's concern about contact with his children. Hodgson's no-contact sentencing conditions are reasonably necessary and narrowly tailored such that the sentencing court did not abuse its discretion when it imposed these conditions.

## IV. LACK OF CrR 3.5 WRITTEN FINDINGS AND CONCLUSIONS

Hodgson argues that following the mid-trial CrR 3.5 hearing, the trial court failed to enter written findings of fact and conclusions of law and so remand is required for their entry. We hold that any error was harmless.

CrR 3.5 governs the admissibility of a statement of the accused and states in relevant part that

> [w]hen a statement of the accused is to be offered in evidence, the judge . . . shall hold or set the time for a hearing, if not previously held, for the purpose of determining whether the statement is admissible. . . .
>     . . . .
>     . . . After the hearing, the court shall set forth in writing: (1) the undisputed facts; (2) the disputed facts; (3) conclusions as to the disputed facts; and (4) conclusion as to whether the statement is admissible and the reasons therefor.

CrR 3.5(a), (c).

10

A trial court's failure to make written findings and conclusions after a CrR 3.5 hearing is error. *State v. Thompson*, 73 Wn. App. 122, 130, 867 P.2d 691 (1994). Absence of written findings following a CrR 3.5 hearing is not grounds for reversal without a showing of prejudice. *Thompson*, 73 Wn. App. at 130.

Here, the trial court conducted a CrR 3.5 hearing addressing Hodgson's statements to police officers during booking. No written findings or conclusions were entered regarding this hearing. This was error. CrR 3.5; *Thompson*, 73 Wn. App. at 130. But Hodgson does not argue that prejudice resulted from the failure of the trial court to enter written findings and conclusions and acknowledges that the court ruled orally. Thus, the error was harmless and his argument fails. *Thompson*, 73 Wn. App. at 130.

## V. STATEMENT OF ADDITIONAL GROUNDS

Hodgson asserts five arguments in his SAG. These assertions fail.

First, Hodgson claims that there was a third stain on the floral sheet that he believes should have been tested because it could have revealed AG's DNA on the sheet. The forensic investigator stated that he tested the sheet for only Hodgson's and MG's DNA and does not mention a "third stain" located on the sheet. Because Hodgson offers no declaration from his attorney or any other evidence indicating what theory of the case Hodgson wished to present by inquiring as to this alleged stain at trial, we decline to consider this claim because he failed to identify the nature and occurrence of the alleged error. RAP 10.10(c). Additionally, because there is no evidence of a "third stain" in the record, he alleges a fact outside the record. The appropriate means of doing this is through a personal restraint petition. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

Second, Hodgson argues that the sheets entered into evidence were "too neatly folded" compared to the other bedding entered into evidence and so seemed "out of place," and AG and her friend, rather than the police, improperly gathered the bedding evidence on the night of the incident. SAG at 1. Thus, Hodgson appears to argue that the bedding should not have come into evidence. However, Hodgson did not object to the admission of the bedding evidence at trial. When no objection is made to the evidence at trial, an evidentiary error is not preserved for appeal. *State v. Powell*, 126 Wn.2d 244, 256, 893 P.2d 615 (1995). Thus, we do not review this objection.

Third, Hodgson speaks to numerous instances where he believed testimony from witnesses at trial were inconsistent, unpersuasive, or untruthful. But we defer to the jury on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). Thus, these claims fail.

Fourth, Hodgson alleges that following his arrest, AG stole money from his checking account by forging his signature on a check and that she planned to do so prior to his arrest. We do not address this issue because Hodgson fails to identify the nature of any alleged error with respect to this check. RAP 10.10(c).

Fifth, Hodgson alleges video tapes from the police station should be checked to confirm that the police officers who testified lied about portions of the booking procedure. The video tapes are not in our record. Again, the appropriate means of raising this issue is through a personal restraint petition. *McFarland*, 127 Wn.2d at 335.

No. 46741-1-II

We affirm his convictions and sentence but remand to vacate the sexual assault protection order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Johanson, J._
JOHANSON, P.J.

We concur:

_Melnick, J._
MELNICK, J.

_Sutton, J._
SUTTON, J.

13